## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION, CANTON

----------------------------------------------------------x
In re:                                   :   Case No. 12-61113
                                         :
NAVARRE INDUSTRIES, INC.                 :   Chapter 11
an Ohio corporation,                     :
                                         :   Judge Russ Kendig
       Debtor and               :
       Debtor-in-Possession.     :
                                         :
(Employer Tax I.D. No. 34-1680039)       :
----------------------------------------------------------x

## DEBTOR'S PLAN OF REORGANIZATION

Dated: November 15, 2012

                                     /s/ Anthony J. DeGirolamo
                                     Anthony J. DeGirolamo (0059265)
                                     Courtyard Centre Suite 307
                                     116 Cleveland Avenue NW
                                     Canton, Ohio 44702
                                     Telephone:  330-588-9700
                                     Facsimile:  330-588-9713
                                     E-mail:  ajdlaw@sbcglobal.net

                                     COUNSEL FOR THE DEBTOR
                                     AND DEBTOR IN POSSESSION

# TABLE OF CONTENTS

*INTRODUCTION* ........................................................................................................ *1*

*ARTICLE I* ................................................................................................................. *1*

*DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME* .... *1*

   **A.** **Defined Terms** ............................................................................................ **1**

   **B.** **Rules Of Interpretation And Computation Of Time** ....................................... **7**
      1.  Rules of Interpretation .............................................................................. 7
      2.  Computation of Time ................................................................................ 8
      3.  Governing Law ......................................................................................... 8

*ARTICLE II* ............................................................................................................... *8*

*CLASSIFICATION OF CLAIMS* ................................................................................ *8*

   **A.** **In General** ................................................................................................... **8**

   **B.** **Claims Against the Debtor** ............................................................................ **9**
      1.  Unimpaired Classes Of Claims (Classes A) ............................................... 9
          a.  Classes A ...................................................................................... 9
      2.  Impaired Classes of Claims ...................................................................... 9
          a.  Class B-1, B-2, B-3, and B-4 Claims: ............................................ 9
          b.  Class C Claims: ............................................................................. 9
          c.  Class D: ......................................................................................... 9

*ARTICLE III* ............................................................................................................. *9*

*TREATMENT OF UNCLASSIFIED CLAIMS* ............................................................ *9*

   **A.** **Administrative Claims** .................................................................................. **9**
      1.  In General ................................................................................................ 9
      2.  Statutory Fees ......................................................................................... 10
      3.  Ordinary Course Liabilities ..................................................................... 10
      4.  Bar Date for Administrative Claims ......................................................... 10
          a.  General Bar Date Provisions ........................................................ 10
          b.  Professional Compensation .......................................................... 11

   **B.** **Priority Tax Claims** .................................................................................... **11**

*ARTICLE IV* ............................................................................................................ *12*

*TREATMENT OF CLASSES OF CLAIMS* ............................................................... *12*

   **A.** **Treatment of Unimpaired Class of Claims** ................................................... **12**
          1.  Class A: ...................................................................................... 12

   **B.** **Treatment of Impaired Classes of Claims** ................................................... **12**
      1.  Classes B-1, B-2, B-3, and B-4: ............................................................. 12
      2.  CLASS C ............................................................................................... 14
      3.  CLASS D: ............................................................................................. 14

   **C.** **No Accrual of Postpetition Interest** ............................................................. **15**

*ARTICLE V* ............................................................................................................. *15*

*ACCEPTANCE OR REJECTION OF THIS PLAN; EFFECT OF* ............................. *15*

i

*REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS* .............................. 15

    A.   **Impaired Classes of Claims Entitled to Vote** ......................................................15

    B.   **Acceptance by an Impaired Class of Claims or Interests** .................................15

    C.   **Presumed Acceptances by Unimpaired Classes** ..............................................15

*ARTICLE VI* ...................................................................................................................... 16

*MEANS OF EXECUTION* .................................................................................................. 16

    A.   **Introduction** ........................................................................................................16

    B.   **Payments To Class C** .........................................................................................16

        3.   Interest Holders' Treatment ...............................................................16

    C.   **Preservation of Rights of Action** ......................................................................16

    D.   **Releases by Recipients of Distributions** ...........................................................17

    E.   **Release of Liens** ................................................................................................17

*ARTICLE VII* ..................................................................................................................... 18

*TREATMENT OF DISPUTED CLAIMS* ............................................................................ 18

*ARTICLE VIII* .................................................................................................................... 18

*EXECUTORY CONTRACTS AND UNEXPIRED LEASES* ................................................ 18

*ARTICLE IX* ...................................................................................................................... 19

*CONDITIONS PRECEDENT TO CONFIRMATION AND* ................................................. 19

*CONSUMMATION OF THIS PLAN* .................................................................................. 19

    A.   **Conditions to Confirmation** ..............................................................................19

    B.   **Conditions to Effective Date** .............................................................................19

*ARTICLE X* ....................................................................................................................... 19

*CRAM-DOWN* ................................................................................................................... 19

*ARTICLE XI* ...................................................................................................................... 20

*TITLE TO THE DEBTOR'S PROPERTY* .......................................................................... 20

*ARTICLE XII* ..................................................................................................................... 20

*RETENTION OF CERTAIN CAUSES OF ACTION* .......................................................... 20

*ARTICLE XIII* .................................................................................................................... 20

*DISCHARGE AND INJUNCTION* ..................................................................................... 20

    A.   **Discharge** ...........................................................................................................20

    B.   **Injunction** ...........................................................................................................21

*ARTICLE XIV* .................................................................................................................... 22

*PROVISIONS GOVERNING DISTRIBUTIONS* ................................................................ 22

    A.   **General Distribution Provisions** .......................................................................22

86533

      1.    Method of Distributions to Holders of Claims.................................................22
      2.    Distributions to be Made on the Effective Date........................................22
      3.    Timing and Calculation of Amounts to be Distributed............................23
            a.   Establishment of Distribution Dates.......................................23
            b.   Timing of Payment of Distributions of Less Than $10...............23

**B.**    **Delivery of Distributions and Undeliverable or Unclaimed Distributions............................ 23**
      1.    Delivery of Distributions in General...........................................23
      2.    Undeliverable Distributions........................................................24

**C.**    **Means of Cash Payments........................................................................... 24**

**D.**    **Compliance with Tax Requirements ........................................................ 24**

**E.**    **Setoffs........................................................................................................ 25**

*ARTICLE XV* ....................................................................................................... **25**

*MISCELLANEOUS PROVISIONS* ..................................................................... **25**
      A.    Retention of Jurisdiction............................................................25
      B.    Modification of this Plan ............................................................25
      C.    Revocation of this Plan ..............................................................26
      D.    Exculpation and Limitation of Liability.....................................26
      E.    Severability of Plan Provisions..................................................26
      F.    Determination of Tax Liability ...................................................27
      G.    Professionals Employed by Order of the Court. .........................27

86533

# INTRODUCTION

Navarre Industries, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), hereby proposes the following plan of reorganization, pursuant to section 1121(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330. **All holders of claims against the Debtor are encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. The Debtor reserves the right to alter, amend, or modify this Plan pursuant to the terms of this Plan and the Bankruptcy Code.**

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### A.    Defined Terms

For purposes of this Plan, the following definitions shall apply, unless the context otherwise requires:

1.1.    **"Administrative Claim"** shall mean a Claim for costs and expenses of administration allowed under section 503(b) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as payments for leased equipment and premises); (b) compensation for legal, financial, and business advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Bankruptcy Code, 28 U.S.C. §§ 1911-1930.

1.2.    **"Allowed Claim" or "Allowed Interest"** shall mean a claim or interest:  (a) proof of which has been filed with the Court on or before the claim bar dated fixed by the Court;

1

86533

or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to amount; or (c) which is an administrative claim arising in the ordinary course of the Debtor's business and financial affairs, to which no objection is filed. However, no Claim or Interest shall be included in this definition if it is a contingent claim or if an objection to the allowance thereof has been, or may be, filed within any applicable period of time fixed by the Bankruptcy Code, Bankruptcy Rules, or by order of the Court, unless and until such objection has been determined by a Final Order of the Court.

1.3. **"Allowed Priority Claim"** shall mean a Priority Claim to the extent that it is, or has become, an Allowed Claim, which in any event, shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

1.4. **"Allowed Priority Tax Claim"** shall mean a Priority Tax Claim to the extent that it is, or has become, an Allowed Claim, which in any event, shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

1.5. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien on property in which the Debtor have an interest, or which is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with section 506(a) of the Bankruptcy Code) of such creditor's interest in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

1.6. **"Avoidance Actions"** means any claim or cause of action of the Debtor or the Estate, including claims and causes of action pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code.

86533

1.7.  **"Bankruptcy Code"** shall mean the Bankruptcy Code of 1978, effective October 1, 1979, as amended, as set forth in title 11 of the United States Code.

1.8.  **"Bankruptcy Rules"** shall mean, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Court, as now in effect or hereafter amended.

1.9.  **"Bar Date**" shall mean the applicable bar date by which a Proof of Claim must be Filed, as established by the Court, including the Bar Date Order, and the Confirmation Order.

1.10.  **"Bar Date Order"** shall mean the Order Granting the Debtor's Motion Establishing Bar Date for Filing Proofs of Claim and Approving Form and Notice Thereof, entered by the Court on July 11, 2012.

1.11.   **"Chapter 11 Case"** shall mean the chapter 11 case filed by the Debtor and pending in the Court under Case No. 12-61113.

1.12.  **"Claim"** shall mean any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

1.13.  **"Class"** shall mean a class of Claims, as described in Article II.

1.14.  **"Confirmation Order"** shall mean the order of the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.15.  **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, in Canton, or such other court as may have jurisdiction over the Debtor with respect to the Chapter 11 Case.

86533

1.16.  **"Creditor"** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date.

1.17.  **"Debtor" or "Debtor-in-Possession"** shall mean Navarre Industries, Inc.

1.18.  **"Disputed Claim"** shall mean:

      a.    if no Proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim that has been listed on the Debtor's schedule of liabilities as not disputed, contingent, or unliquidated, but as to which the Debtor, prior to the Effective Date, or any other party in interest, has Filed an objection or (ii) a Claim that has been listed on the Debtor's schedule of liabilities as disputed, contingent, or unliquidated; or

      b.    if a Proof of Claim or request for payment of an Administrative Claim has been Filed by the applicable Bar Date, or has otherwise been deemed timely Filed under applicable law: (i) a Claim that is listed on the Debtor's schedule of liabilities as not disputed, contingent, or unliquidated, but as to which the nature or amount of the Claim as asserted in the Proof of Claim varies from the nature and amount of such Claim as it is listed on the schedule of liabilities; *provided however*, that such Claim shall not be a Disputed Claim under such circumstances if the Debtor determines that the allowable nature and amount of the Claim is as asserted in the Proof of Claim; or (ii) a Claim as to which an objection has been Filed by the Debtor, prior to the Effective Date, or any other party in interest, and such objection has not been withdrawn or denied by a Final Order.

1.19.  **"Distributable Cash"** shall mean cash available for distribution to non-priority unsecured creditors in the approximate amount shown on Exhibit 3 to the Disclosure Statement accompanying this Plan available through the reorganized Debtor's operations, less amounts paid to holders of Allowed Administrative Claims and Allowed Priority Claims.

1.20.  **"Effective Date"** shall mean the date selected by the Debtor before which:  (a) the order confirming this Plan becomes final and non-appealable, and no appeal of which is pending.  In the event an appeal is pending, the Debtor may, in its sole discretion, select an Effective Date notwithstanding such appeal.

4

86533

1.21.   **"File," "Filed," or "Filing"** shall mean file, filed, or filing with the Court in the Chapter 11 Case.

1.22.   **"Final Order"** shall mean a judgment or order as to which:  (a) any appeal that has been taken or review that has been sought has been finally determined or dismissed; or (b) the time for filing a request for review, notice of appeal, or a petition for certiorari has expired and no request for review, notice of appeal, or petition for certiorari has been timely filed.

1.23.   **"General Unsecured Claim"** shall mean any Claim not secured by a lien or security interest in the Debtor's property and not entitled to priority under section 507 of the Bankruptcy Code.

1.24.   **"Interest"** shall mean the legal, equitable, contractual and all other rights of any person with respect to membership units, common stock, preferred stock or other capital stock or equity securities of or ownership interests in the Debtor, or any warrants, options, or other granted or otherwise agreed to by the Debtor providing for their issuance of any such capital stock, equity securities or ownership interests.

1.25.   **"Interest holder"** shall mean the holder of an interest.

1.26.   **"IRS"** shall mean the Internal Revenue Service of the United States of America.

1.27.    **"Petition Date"** shall mean April 19, 2012, the date the Chapter 11 Case was commenced.

1.28.   **"Plan"** shall mean this Chapter 11 Plan of Reorganization and any applicable modifications or amendments hereto that may be subsequently filed with the Court.

1.29.    **"Priority Claim"** shall mean any Claim entitled to priority in payment under sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code.

86533

1.30. **"Priority Tax Claim"** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.31. **"Professional"** shall mean any professional retained in the Debtor's Chapter 11 Case pursuant to section 327 or 1103 of the Bankruptcy Code.

1.32. **"Pro-Rata"** shall mean proportionately so that: (a) the ratio of the amount of a particular Allowed Claim to the total amount of Allowed Claims of the class in which the particular Allowed Claim is included is the same as (b) the ratio of the amount of consideration distributed on account of such particular Allowed Claim to the consideration distributed on account of all Allowed Claims of the class in which the particular Allowed Claim is included.

1.33. **"Proof of Claim"** shall mean the document required to be Filed with the Court or its designated agent by a person asserting a Claim against the Debtor pursuant to chapter 5 of the Bankruptcy Code.

1.34. **"Schedules"** shall mean Schedules of Assets and Liabilities and Statement of Financial Affairs, as they may be amended, filed by the Debtor with the Court listing the Debtor's liabilities and assets.

1.35. **"Secured Claim"** shall mean a claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) and, if applicable, section 1129(b) of the Bankruptcy Code.

1.36. **"Stock"** shall mean the duly authorized, validly issued, and outstanding shares of common stock of the Debtor.

86533

1.37. **"Voting Deadline"** shall mean the deadline for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, as specified in the Disclosure Statement.

Terms defined in the Bankruptcy Code and not otherwise specifically defined herein shall have the meanings attributed to them in the Bankruptcy Code.

## B.    Rules Of Interpretation And Computation Of Time

### 1.    Rules of Interpretation

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) all references in this Plan to "Sections", "Articles", and "Exhibits" are references to Sections, Articles, and Exhibits of or to this Plan; (e) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) subject to the provisions of any contract, articles of incorporation, code of regulations, similar constituent documents, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with Ohio law except to the

7

extent that federal law, including the Bankruptcy Code and Bankruptcy Rules applies; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

### 2. Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

### 3. Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of a contract, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and constructed and enforced in accordance with, the laws of the State of Ohio, without giving effect to the principles or conflicts of law thereof.

## ARTICLE II
## CLASSIFICATION OF CLAIMS

### A. In General

All Claims, except Administrative Claims and Priority Tax Claims, are placed in the Classes described below. In accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below in Article III, have not been classified. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

86533

B.    **Claims Against the Debtor**

1.    **Unimpaired Classes Of Claims (Classes A)**

    *a.*    *Classes A*

All Allowed Priority Claims under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. The Debtor estimates Allowed Priority Claims in the following amounts based on the Proofs of Claim filed in the Chapter 11 Case: Class A. Total estimated Class A, claims are $0.00

2.    **Impaired Classes of Claims**

    *a.*    *Class B-1, B-2, B-3, B-4, and B-5 Claims:*

Allowed Secured Claims of Classes B-1, B-2, B-3, B-4, and B-5 (PNC Bank ("PNC"), Huntington National Bank ("HNB"), the Internal Revenue Service ("IRS"), Aerolite Extrusion Co. ("Aerolite") and the Stark County Treasurer ("Treasurer"), respectively). The amount of Classes B-1 through B-5 Allowed Secured Claims shall be as stated on Schedule II.B.2.

    *b.*    *Class C Claims:*

All Allowed Claims that are General Unsecured Claims. Class C includes Claims of trade creditors and unsecured portions of secured Claims against the Debtor.

    *c.*    *Class D:*

Interests that are Allowed Interests: Paul Miller.

**ARTICLE III**
**TREATMENT OF UNCLASSIFIED CLAIMS**

A.    **Administrative Claims**

1.    **In General**

Except as specified in Articles VI and XIV of this Plan, and subject to the Confirmation Order, and unless otherwise agreed to by the holder of an Allowed Administrative

9

86533

Claim and the Debtor, each holder of an Allowed Administrative Claim will receive from the Debtor cash equal to the amount of such Allowed Administrative Claim on the Effective Date or, if the Administrative Claim is not allowed as of the Effective Date, 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, in full satisfaction of its Claim.

2.      **Statutory Fees**

On the Effective Date, the Debtor will pay Administrative Claims for fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation hearing, in cash equal to the amount of such Administrative Claims.  In addition, pursuant to section 1930(a)(6) of title 28 of the United States Code, the Debtor will pay quarterly fees arising under such section until the chapter 11 case is closed, converted, or dismissed.

3.      **Ordinary Course Liabilities**

Administrative Claims based on liabilities incurred by the Debtor in the ordinary course of its business including real estate taxes and insurance on the Debtor's current business premises will be paid by the Debtor, following the Effective Date, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, provided that any such Administrative Claim is supported by the Debtor's books and records. If an Administrative Claim is not so supported, then the holder of such Administrative Claim must comply with the provisions of Article III. A. 4 of this Plan.

4.      **Bar Date for Administrative Claims**

a.      ***General Bar Date Provisions***

Holders of Administrative Claims are required to File and serve a request for payment in accordance with the Confirmation Order.  If any such Claim is not Filed and served by the Claim Bar Date, it shall be forever barred and will be deemed discharged as of the

10

86533

Effective Date. Objections to such requests must be Filed and served on the Debtor, and the requesting party, by 20 days after the Filing of the applicable request for payment of the Administrative Claim.

### b. Professional Compensation

Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered before the Confirmation Date (including compensation requested pursuant to section 503(b)(3) and (4) of the Bankruptcy Code by any Professional or other entity for making a substantial contribution in the Debtor's Chapter 11 Case) must File and serve on the Debtor, and such other entities that are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, an application for final allowance of compensation and reimbursement of expenses no later than 45 days after the Confirmation Date. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtor, and the requesting party by the earlier of (a) 65 days after the Confirmation Date and (b) 20 days after the Filing of the applicable request for payment of compensation and reimbursement of expenses.

### B. Priority Tax Claims

Unless such holder, or its successors or assigns, and the Debtor agrees to other terms, or a Final Order of the Court provides for other terms, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code subject to Article VI of this Plan, the Debtor will pay, in full, in cash Allowed Priority Tax Claims no later than sixty (60) months following the Petition Date. The Debtor will make monthly payments on all Priority Tax Claims as set forth on Schedule III.B attached hereto.

11

86533

## ARTICLE IV
## TREATMENT OF CLASSES OF CLAIMS

**A.      Treatment of Unimpaired Class of Claims**

      **1.      Class A:**

Each holder of a Class A Allowed Claim shall be paid in full, either (i) on the Effective Date; (ii) within thirty days of the allowance of such Claim by a Final Order; or (iii) over five (5) years from the Petition Date in quarterly payments whichever is later, or under such other terms as may be agreed upon by the holder of such Allowed Claim and the Debtor.

**B.      Treatment of Impaired Classes of Claims**

      **1.      Classes B-1, B-2, B-3, B-4, and B-5:**

In full satisfaction of their Allowed Claims, the holders of Allowed Claims in Classes B-1, B-2, B-3, B-4, and B-5 shall receive the following:

      a.      The holder of Allowed Claims in Class B-1 (PNC) shall receive the following in full satisfaction of its Allowed Secured Claims:

            i.      The Debtor will pay: (w) $799,921.06, or the amount owed on the Effective Date, whichever is less, to PNC on the promissory note dated April 19, 2004, (Acct. No. 1266) as it may have been amended from time to time ("Note 1"); (x) $178,021.10, or the amount owed on the Effective Date, whichever is less, to PNC on the promissory note dated April 19, 2004, (Acct. No. 1274) as it may have been amended from time to time ("Note 2"); (y) $92,497.99, or the amount owed on the Effective Date, whichever is less, to PNC on the promissory note dated October 5, 2005, (Acct. No. 1259) as it may have been amended from time to time ("Note 3"); and (z) $30,567.25, or the amount owed on the Effective Date,

86533

whichever is less, to PNC on the promissory note dated January 25, 2005, (Acct. No. 0089) as it may have been amended from time to time ("Note 4"), together with simple interest at 5.25% per annum, amortized over a term of 180 months with any unpaid balance coming due with 60th month after the Effective Date, with no prepayment penalty and upon request, with the Debtor executing loan documents in a form and substance acceptable to PNC. The payment terms of the restructured obligations shall be as follows: the Debtor will make equal monthly payments not to exceed $5,738.00 on Note 1, $1,326.00 on Note 2, $651.00 on Note 3, and $232.00 on Note 4. PNC shall retain its security interest in collateral with the same validity and priority as on the Petition Date (the "PNC Collateral").

    ii.  The balance, if any, of PNC's Claim shall be paid as a Class C Claim.

b.    The holder of an Allowed Claim in Class B-2 (HNB) shall receive the following in full satisfaction of its Allowed Secured Claims:

    i.  The Debtor will pay $0 to HNB on the promissory note dated May 18, 2010, as an Allowed Secured Claim. HNB's security interest evidenced by UCC filing OH00143467383 shall be stripped and discharged as of the Effective Date.

    ii.  The balance of HNB's Claim shall be paid as a Class C Claim.

c.    The holder of an Allowed Claim in Class B-3 (IRS) shall receive the following in full satisfaction of its Allowed Secured Claims:

13

86533

i. The Debtor will pay $264,582.00, or the amount owed on the Effective Date, whichever is less, to the IRS as an Allowed Priority Tax Claim.

d. The holder of an Allowed Claim in Class B-4 (Aerolite) shall receive the following in full satisfaction of its Allowed Secured Claims:

i. The Debtor will pay $0 to Aerolite on the promissory note dated April 30, 2008, as an Allowed Secured Claim. Aerolite's mortgage filed as document no. 20087030030487 in the Stark County Recorder's office shall be stripped and discharged as of the Effective Date.

ii. The balance of Aerolite's Claim shall be paid as a Class C Claim.

e. The holder of an Allowed Claim in Class B-5 (Treasurer) shall receive the following in full satisfaction of its Allowed Secured Claims:

i. The Debtor will pay $41,300 to the Treasurer as an Allowed Secured Claim over sixty (60) months commencing the first month after the Effective Date, together with interest at the statutory rate.

**2.  CLASS C**

Each holder of a Class C Allowed Claim shall receive in full satisfaction of its Allowed Class C Claim a Pro Rata portion of Distributable Cash from the Debtor. The payment by the Debtor to holders of Allowed Class C Claims shall be made in annual payments for up to five (5) years, beginning in the first year following the Effective Date, but in no event, commencing no later than March 31, 2014.

**3.  CLASS D:**

The holders of Allowed Interests in Class D shall retain their Interest in the Debtor.

86533

**C.      No Accrual of Postpetition Interest**

Except as otherwise provided in this Plan, no holder of an Allowed Claim shall be entitled to the accrual of postpetition interest or the payment by the Debtor of postpetition interest on account of such Claim for any purpose.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THIS PLAN; EFFECT OF
## REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS

**A.      Impaired Classes of Claims Entitled to Vote**

Except as otherwise provided in this Plan, holders of Allowed Claims in each impaired Class of Claims are entitled to vote as a class to accept or reject this Plan.

**B.      Acceptance by an Impaired Class of Claims or Interests**

Pursuant to section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted this Plan if the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class actually voting on this Plan have voted to accept this Plan.

Pursuant to section 1126(d) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Interests has accepted this Plan if the holders of at least two-thirds (2/3) of the Allowed Interests of such Class actually voting on this Plan have voted to accept this Plan

**C.      Presumed Acceptances by Unimpaired Classes**

Class A is unimpaired by this Plan.  Under section 1126(f) of the Bankruptcy Code, the holders of such Claims are conclusively presumed to have accepted this Plan, and the votes of such holders shall not be solicited.

86533

## ARTICLE VI
## MEANS OF EXECUTION

**A.      Introduction**

Though Restructuring Transactions discussed below, the Debtor will restructure its finances by continued operations and modifying certain secured obligations.

**B.      Payments To Class C**

The holders of Allowed Claims in Class C shall be paid by the Debtor in annual payments from the Debtor's disposable income for a period of not more than five (5) years, with such five (5) year period commencing on the Effective Date, but in no event, commencing later than March 31, 2014.  Payments of Distributable Cash shall be each holder's Pro-Rata share of Distributable Cash from (i) the Debtor's disposable income; and (ii) any funds recovered by the Debtor, less any costs associated with recovering such funds, with respect to those claims, demands, and causes of action retained pursuant to Article IX of this Plan from the preceding calendar year, up to a maximum amount of $84,586.00.

**3.      Interest Holders' Treatment**

Holders of Allowed Interests shall retain their Interests in the Debtor.

**C.      Preservation of Rights of Action**

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, pursuant to section 1123(b) of the Bankruptcy Code, the Debtor, and its successors and assigns, retains and may enforce any claims, rights, and causes of action that the Debtor or the Estate may hold against any entity, including, but not limited to, any Avoidance Actions.  The Debtor in its capacity as reorganized Debtor shall be authorized and empowered to prosecute and/or settle any such claims, rights, or causes of action.

16

86533

**D.      Releases by Recipients of Distributions**

Except as otherwise provided in this Plan, each entity receiving a distribution pursuant to this Plan on account of its Allowed Claim will be deemed to forever release, waive, and discharge all known and unknown Claims of any nature that such entity has, had, or may have, prior to Effective Date against the Debtor to the fullest extent permitted under applicable law. The Confirmation Order will enjoin the prosecution, whether directly, derivatively, or otherwise, of any claim, debt, and right or cause of action released or to be released pursuant to this Plan.

**E.      Release of Liens**

Except as otherwise provided in this Plan, or in any contract, instrument, release, or other agreement or document created in connection with this Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estate, or against property that is collateral for any obligation of the Debtor, will be fully released and discharged, and all of the rights, titles, and interests of any holder of such mortgages, deeds of trust, liens or other security interests will revert to the Debtor and its successors and assigns.

**F.      Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

The Debtor and any entity formed under this Plan will be authorized to:  (a) execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents contemplated by or entered into in connection with this Plan; and (b) take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtor or any entity formed under this Plan will be authorized to certify or attest to any of the foregoing actions.  Pursuant to section 1146(c) of the Bankruptcy Code: (a) the creation or transfer of any mortgage, deed of trust or other security interest; (b) the making or assignment of any lease or sublease; (c) the making or delivery of any deed or other instrument, in furtherance

17

86533

of or in connection with this Plan, including any agreements of consolidation, deeds, bills of sale, assignments, assumptions, or delegations of any asset, property, right, liability, duty or obligation; or (d) the making of any instruments of transfer executed in connection with any of the foregoing will not be subject to any stamp tax, real estate transfer tax, or similar tax.

## ARTICLE VII
## TREATMENT OF DISPUTED CLAIMS

No payment or distributions will be made on a Claim if any portion of the Claim is disputed until all of the objections to the Claim, or any portion of the Claim, have been determined by a Final Order of the Court. Any payment or distribution that otherwise would have been made on account of such Claim had it been allowed will be held in reserve by the Debtor (in the "Unpaid Claims Reserve") pending a determination of the allowability of the Claim.

In the event that a Disputed Claim is resolved by the allowance of such Claim in whole or in part, the Debtor will make the appropriate distribution to the holder of the Claim from the Unpaid Claims Reserve in accordance with the provisions of this Plan. When all Disputed Claims have been allowed or disallowed, all cash then remaining in the Unpaid Claims Reserve will be distributed to holders of Allowed Class C Claims.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor hereby assumes no agreements with and rejects all executory contracts and unexpired leases to which the Debtor are a party that have not been assumed or rejected by an Order of the Court prior to the Effective Date with the specific exception of the tolling agreement with Therma Tru which is assumed. Any and all claims for damages arising from the rejection

86533

of executory contracts or unexpired leases shall be treated as non-priority General Unsecured Claims and included in Class C.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

**A.    Conditions to Confirmation**

The Court will not enter the Confirmation Order unless, and until, each of the following conditions has been satisfied or waived (if waivable):

1.    The Court will have entered an order approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code;

2.    The Confirmation Order will be reasonably acceptable to the Debtor, in form and substance.

**B.    Conditions to Effective Date**

This Plan shall not be consummated, and the Effective Date shall not occur, unless the following conditions are satisfied or waived (if waivable):

1.    The Court will have entered the Confirmation Order;

2.    The Court will have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Debtor to take all actions necessary or appropriate to implement this Plan;

## ARTICLE X
## CRAM-DOWN

The Debtor hereby requests the Court to find that the provisions of this Plan provide fair and equitable treatment to any class of Claims that is impaired under this Plan and that has not accepted this Plan, and to confirm this Plan notwithstanding the requirements of section 1129(a)(8) of the Bankruptcy Code as applied to such class.

19

86533

## ARTICLE XI
## TITLE TO THE DEBTOR'S PROPERTY

Upon confirmation, all property of the Debtor's estate shall vest in the Debtor and its transferees free and clear of all liens, claims, or encumbrances except as specifically set forth in this Plan.

## ARTICLE XII
## RETENTION OF CERTAIN CAUSES OF ACTION

This Plan provides that the Debtor shall retain any claims, demands, and causes of action of the kind specified in sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code accruing prior to the Effective Date. The Debtor may, upon notice to the Office of the United States Trustee, compromise and settle any such retained claims, demands, and causes of action. All consideration received by the Debtor as a result of a settlement of any such retained claims, or of enforcement of any judgment obtained on any such retained claims, less any costs associated with receiving or recovering such consideration, shall be utilized by the Debtor to fund this Plan, and shall be distributed in accordance with its terms.

## ARTICLE XIII
## DISCHARGE AND INJUNCTION

**A.      Discharge**

Except as provided in this Plan or the Confirmation Order, the rights afforded under this Plan and the treatment of Claims under this Plan will be in exchange for and in complete satisfaction, discharge, and release of all Claims, including any interest accrued on Claims from the Petition Date. Except as provided in this Plan or the Confirmation Order, Confirmation will (a) discharge the Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is Filed or deemed Filed pursuant to

20

86533

section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of a Claim based on such debt has accepted this Plan; and (b) terminate all interests and other rights of creditors, if any, in property of the Debtor.

As of the Confirmation Date, except as provided in this Plan or Confirmation Order, all entities will be precluded from asserting against the Debtor, the Estate, and any entity to be formed under this Plan, any other or further Claims, debts, rights, causes or action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order will be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor and termination of all such Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor, and/or any entity to be formed under this Plan, at any time, to the extent that such judgment relates to a discharged Claim.

**B.    Injunction**

Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim, or other debt or liability that is discharged pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts, or liabilities: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the property of the Debtor or any entity to be formed under this Plan and property transferred to any such entity; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, or the property of the Debtor or any entity to be

21

86533

formed under this Plan and property transferred to any such entity; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, or the property of the Debtor or any entity to be formed under this Plan and property transferred to any such entity; (d) asserting a right of subordination of any kind against any debt, liability, or obligation due to the Debtor, or the Estate or the property of the Debtor or any entity to be formed under this Plan and property transferred to any such entity; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

## ARTICLE XIV
## PROVISIONS GOVERNING DISTRIBUTIONS

A.       **General Distribution Provisions**

1.       **Method of Distributions to Holders of Claims**

The Debtor will make all distributions required under this Plan and will serve without bond.

2.       **Distributions to be Made on the Effective Date**

Distributions to be made on or as soon as practicable after the Effective Date to holders of Claims that are allowed as of the Effective Date will be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (a) March 31, 2014, or such later date as the Debtor first has funds sufficient to make such payments while retaining appropriate reserves for payment of: (i) all costs, expenses, and obligations of administering this Plan and (ii) all other Claims that have the same priority or a higher priority of payment as established herein or (b) such later date when the applicable conditions of this Plan regarding undeliverable distributions are satisfied. Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to this Article.

86533

### 3. Timing and Calculation of Amounts to be Distributed

#### a. *Establishment of Distribution Dates*

Distribution Dates shall be established by the Debtor in its discretion. The Debtor shall establish Distribution Dates with a goal of making distributions to creditors as soon as practicable in annual payments commencing after the first calendar year after the Effective Date, but in no event, commencing no later than March 31, 2014. Before making any distribution, the Debtor will establish an appropriate reserve for the payment of costs. In making any distribution, the Debtor will account for and reserve for distributions that are being made and/or will need to be made to other Classes and to other members of the same Class.

#### b. *Timing of Payment of Distributions of Less Than $10*

To the extent that any distribution to be made to an Allowed Claim holder (which Allowed Claim holder has not already received a distribution hereunder) on any Distribution Date is less than $10, the Debtor may withhold such distribution until a later Distribution Date on which the cumulative amount to be distributed to such Allowed Claim holder is equal to or greater than $10, if ever.

### B. Delivery of Distributions and Undeliverable or Unclaimed Distributions

#### 1. Delivery of Distributions in General

Distributions to holders of Allowed Claims will be made by the Debtor: (a) at the addresses set forth on the respective proofs of Claim Filed by holders of such Claims; (b) at the addresses set forth in any written certification of address change delivered to the Debtor after the date of Filing of any related proof of Claim; or (c) at the addresses reflected in the Debtor's schedules of liabilities if no proof of Claim has been Filed and the Debtor has not received a written notice of a change of address.

86533

### 2. Undeliverable Distributions

If any distribution to an Allowed Claim holder is returned to the Debtor as undeliverable, no further distributions will be made to such holder unless and until the Debtor is notified by written certification of such holder's then-current address. Nothing contained in this Plan will require the Debtor to attempt to locate any holder of an Allowed Claim. Undeliverable distributions will remain in the possession of the Debtor pursuant to this Section XIV.B.2 until such time as a distribution becomes deliverable. On each Distribution Date, the Debtor will make all distributions that became deliverable to holders of Allowed Claims since the previous Distribution Date. Any holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable distribution to be made by the Debtor within one year after the last date on which a distribution was first deliverable to such Allowed Claim holder will be forever barred from asserting any such Claim. In such cases, any cash held for distribution on account of such Claims will be redistributed to holders of Allowed Claims in the priority order set forth in this Plan.

### C. Means of Cash Payments

Cash payments made pursuant to this Plan will be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor or by wire transfer from a domestic bank, at the option of the Debtor.

### D. Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Debtor and all entities formed under this Plan will comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to this Plan will be subject to such withholding and reporting requirements, and the Debtor and all entities formed under this Plan will be authorized to pay excise or other employer-related taxes. The Debtor and all entities

86533

formed under this Plan will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

Notwithstanding any other provision of this Plan, each entity receiving a distribution of cash pursuant to this Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

E.      Setoffs

Pursuant to section 553 of the Bankruptcy Code, or any applicable nonbankruptcy law, the Debtor may set off against any claims, debts, rights and causes of action of any nature that Debtor or any entity to be formed under this Plan may hold against the holder of an Allowed Claim, and the distributions to be made pursuant to this Plan on an Allowed Claim (before any distribution is made with regard to such Claim).   Neither the failure to effect such a setoff, nor the allowance of any Claim hereunder, will constitute a waiver or release of any claims, debts, rights and causes of action against such holder.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

A.      **Retention of Jurisdiction**

The Court retains jurisdiction over the Debtor's Plan and the parties to the Debtor's Plan to interpret and enforce all the provisions of the Debtor's Plan.

B.      **Modification of this Plan**

Subject to the restriction on modifications set forth in section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify this Plan before its substantial consummation.

86533

### C.     Revocation of this Plan

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if Confirmation does not occur, then this Plan will be null and void in all respects, and nothing contained in this Plan will: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor's real or personal property; or (b) prejudice in any manner the rights of the Debtor.

### D.     Exculpation and Limitation of Liability

From and after the Effective Date, the Debtor, Reorganized Debtor, and its members and Representatives, acting in such capacity, shall neither incur any liability to any Person for any act taken or omitted in connection with the Debtor's restructuring, including the formulation, preparation, dissemination, implementation, confirmation or approving of the Chapter 11 Case, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that this section shall not apply to the obligations arising under the Plan an provided further, however, that the foregoing provisions shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent that act or omission is determined in a Final Order to have constituted fraud, bad faith, gross negligence or willful misconduct.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### E.     Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such

26

86533

term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, and so long as any such alteration or interpretation is not a material change to the Plan as determined by the Debtor, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. If any such alternation or interpretation results in a material change to the Plan as determined by the Debtor, then the Debtor reserves the right to withdraw the Plan. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### F.      Determination of Tax Liability

Pursuant to section 505(b) of the Bankruptcy Code, the Debtor intend to request a determination of any unpaid liability for any federal income tax incurred during the administration of the Chapter 11 Case by submitting a tax return for such tax, together with payment of the tax, if any, shown thereon, and a request for such a determination to the IRS. The Debtor reserves the right, to the extent they deems it necessary and appropriate, to request similar determinations of any unpaid liability for any other taxes (including, without limitation, any state or local taxes) incurred during the administration of their Chapter 11 Case by submitting a tax return for such other tax, together with payment of the tax, if any, shown thereon, and a request for such a determination to the appropriate governmental unit charged with responsibility for collection or determination of such tax.

### G.      Professionals Employed by Order of the Court.

After Confirmation of this Plan, all applications for compensation and reimbursement of expenses, and notice of the hearing thereon, shall be served upon counsel for the Debtor, the

86533

Office of the United States Trustee, and any party who files with the Court a new request for notice. After such notice and hearing, the Debtor will be authorized to distribute and pay to such professionals such amounts as approved by the Court.

November 15, 2012

NAVARRE INDUSTRIES, INC.

/s/Paul Miller

By: Paul Miller

Its: President


/s/ Anthony J. DeGirolamo

Anthony J. DeGirolamo (0059265)

Courtyard Centre Suite 307

116 Cleveland Avenue NW

Canton, Ohio 44702

Telephone: 330-588-9700

Facsimile: 330-588-9713

E-mail: ajdlaw@sbcglobal.net

COUNSEL FOR THE DEBTOR

AND DEBTOR IN POSSESSION

86533

| PNC BANK: CLASS B-1 | | | |
|---|---|---|---|
| Approximate Claim Amount | Property | Property Value | Value of Lien |
| $799,921.06<br>$178,021.10<br>$92,497.99<br>$30,5657.25<br>Total $1,101,007.40 | Tangible Real and Personal Property | $780,000 | $780,000 |

| HUNTINGTON NATIONAL BANK: CLASS B-2 | | | |
|---|---|---|---|
| Approximate Claim Amount | Property | Property Value | Value of Lien |
| $206,591.29 | Tangible Personal Property | $780,000 | $0 |

| INTERNAL REVENUE SERVICE: CLASS B-3 | | | |
|---|---|---|---|
| Approximate Claim Amount | Property | Property Value | Value of Lien |
| $264,582.37 | Tangible Real and Personal Property | $780,000 | $0 |

| AEROLITE EXTRUSION CO.: CLASS B-4 | | | |
|---|---|---|---|
| Approximate Claim Amount | Property | Property Value | Value of Lien |
| $378,146.03 | Tangible Real Property | $780,000 | $0 |

| STARK COUNTY TREASURER: CLASS B-5 | | | |
|---|---|---|---|
| Approximate Claim Amount | Property | Property Value | Value of Lien |
| $41,300 | Tangible Real Property | $780,000 | $41,300 |

86533

**SCHEDULE III.B**

| CREDITOR | CLAIM AMOUNT |
|---|---:|
| Ohio Bureau of Workers' Compensation | $1,310.05 |
| Ohio Bureau of Workers' Compensation | $180.17 |
| Ohio Bureau of Workers' Compensation | $4,224.08 |
| State of Ohio Department of Taxation | $16,009.33 |
| Internal Revenue Service | $264,582.37 |
| Stark County Treasurer | $41,300.81 |
| Ohio Bureau of Workers' Compensation | $53,287.15 |
| **TOTAL** | **$380,893.96** |

86533