# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION, CANTON

```
--------------------------------------------------------x
In re:                                  :  Case No. 12-61113
                                        :
NAVARRE INDUSTRIES, INC.                :  Chapter 11
an Ohio corporation,                    :
                                        :  Judge Russ Kendig
                Debtor and              :
                Debtor-in-Possession.   :
                                        :
(Employer Tax I.D. No. 34-1680039)      :
--------------------------------------------------------x
```

## DISCLOSURE STATEMENT FOR
## DEBTOR'S PLAN OF REORGANIZATION

Dated: November 15, 2012

/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
Courtyard Centre Suite 307
116 Cleveland Avenue NW
Canton, Ohio 44702
Telephone: 330-588-9700
Facsimile: 330-588-9713
E-mail: ajdlaw@sbcglobal.net

COUNSEL FOR THE DEBTOR
AND DEBTOR IN POSSESSION

**DISCLOSURE STATEMENT DATED NOVEMBER 15, 2012**
**for the**

**Solicitation of Votes**

**with respect to the Plan of Reorganization**

**of**

**NAVARRE INDUSTRIES INC.**

_____

     All capitalized terms in this Disclosure Statement not otherwise defined herein have the meanings ascribed to them in the Plan.

86534

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................................1

OVERVIEW OF THE PLAN...............................................................................................................2

*Summary of Classes and Treatment of Claims* ..................................................................2
*Summary Regarding Assertion and Treatment of Administrative Claims* ........................5
*Ordinary Course Liabilities* ............................................................................................5
*Priority Tax Claims* ..........................................................................................................5
*U.S. Trustee Fees* ...............................................................................................................6
*Sources of Cash to Make the Plan Distributions*.............................................................6
*Conditions Precedent to Confirmation and Consummation of the Plan*..........................6
*Conditions to Confirmation* ..............................................................................................6
*Conditions to Effective Date*.............................................................................................7
*Modification or Revocation of the Plan; Exculpation and Limitation of Liability; Severability* ....7
    *Modification of the Plan* .............................................................................................7
    *Revocation of the Plan*................................................................................................7
    *Exculpation and Limitation of Liability* ....................................................................7
    *Severability of the Plan Provisions* ............................................................................8
    *Determination of Tax Liability* ...................................................................................8

THE DEBTOR AND ITS CHAPTER 11 FILING ..............................................................................8

*Background* ........................................................................................................................8
*The Debtor's Secured Debt* ...............................................................................................9
*Post-Petition Operations*...................................................................................................9
*The Debtor's Professional Advisors*................................................................................10
*Bar Dates* ........................................................................................................................10
    *General Bar Date* .....................................................................................................10
    *Administrative Bar Date* ...........................................................................................10
*Extension of Time to Assume or Reject Real Property Leases* .......................................10
*Investigation of Avoidance Actions*.................................................................................10

THE DEBTOR'S PLAN .......................................................................................................................11

*Vesting of Property*..........................................................................................................11
*Preservation of Rights of Action* ....................................................................................11
*Releases by Recipients of Distributions* .........................................................................11
*Release of Liens*...............................................................................................................11
*Effectuating Documents; Further Transactions; Exemption from Certain*.....................11

RISK FACTORS ................................................................................................................................12

*Ability to Make Plan Distributions* .................................................................................12
*Allowance of Claims*........................................................................................................12
    *Class A Claims*..........................................................................................................12
    *Priority Tax Claims* ...................................................................................................13
    *Administrative Claims* ...............................................................................................13

DISTRIBUTIONS UNDER THE PLAN .............................................................................................13

*Means of Cash Payments*.................................................................................................13
*Compliance with Tax Requirements* ................................................................................13
*Setoffs*...............................................................................................................................13
*Treatment of Disputed Claims*.........................................................................................14
*Authority to Prosecute Objections*...................................................................................14

GENERAL INFORMATION REGARDING THE PLAN ..................................................................14

*Classification and Treatment of Claims* ..........................................................................14
    *In General*..................................................................................................................14
*Treatment of Unimpaired Classes of Claims*...................................................................14

i

86534

*Class A Claims:* ............................................................................................................................ *14*
TREATMENT OF IMPAIRED CLASSES OF CLAIMS ............................................................................ *15*
   *Class B-Claims:* ........................................................................................................................ *15*
   *Class C Claims:* ........................................................................................................................ *15*
NO ACCRUAL OF POSTPETITION INTEREST ................................................................................... *15*
PAYMENT OF ADMINISTRATIVE CLAIMS ....................................................................................... *15*
   *In General* ................................................................................................................................ *15*
   *Statutory Fees* .......................................................................................................................... *15*
   *Ordinary Course Liabilities* .................................................................................................... *16*
   *Bar Date for Administrative Claims* ....................................................................................... *16*
PAYMENT OF PRIORITY CLAIMS AND PRIORITY TAX CLAIMS ...................................................... *16*
EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................................................................... *17*
   *Assumptions and Rejections Generally* ................................................................................... *17*
   *Claims Arising From Rejection; Bar Date For Rejection Damages* ......................................... *17*
   *Approval of Assumptions and Rejections* ................................................................................. *17*
RELEASES BY RECIPIENTS OF DISTRIBUTIONS .............................................................................. *17*
LEGAL EFFECTS OF THE PLAN .................................................................................................... *17*
   *Discharge* ................................................................................................................................. *17*
   *Injunction* ................................................................................................................................ *18*
   *Effect of Defaults Under the Plan* ........................................................................................... *18*
**VOTING AND CONFIRMATION OF THE PLAN** ............................................................................ **18**
VOTING PROCEDURES AND REQUIREMENTS ................................................................................. *19*
CONFIRMATION HEARING ........................................................................................................... *21*
CONFIRMATION ........................................................................................................................... *21*
ACCEPTANCE OR CRAMDOWN ..................................................................................................... *21*
BEST INTERESTS TEST ................................................................................................................. *23*
FEASIBILITY ................................................................................................................................ *24*
**FEDERAL INCOME TAX CONSIDERATIONS** ............................................................................... **24**
**OF CONSUMMATION OF THE PLAN** ......................................................................................... **24**
GENERAL ..................................................................................................................................... *24*
FEDERAL INCOME TAX CONSEQUENCES TO DEBTORS ................................................................. *25*
   *Net Operating Loss Carryforwards* ......................................................................................... *25*
   *Reduction of the Debtor's Indebtedness* ................................................................................... *25*
FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS ............................................... *25*
   *General* ..................................................................................................................................... *25*
   *Bad Debt Deduction* ................................................................................................................. *26*
**RECOMMENDATION AND CONCLUSION** ...................................................................................... **26**

86534

# INTRODUCTION

This Disclosure Statement is being submitted by Navarre Industries Inc., an Ohio corporation (the "Debtor"), in connection with the solicitation of votes in favor of the Debtor's Plan of Reorganization (the "Plan"), a copy of which is attached hereto as Exhibit 1. The Plan represents the means by which the Debtor will exit bankruptcy. As discussed in more detail below, the Plan is the result of significant and intense negotiations by the Debtor and others. The Debtor believes that the Plan provides the best, and perhaps the only, means for its successful emergence from bankruptcy.

The confirmation of a plan of reorganization, which is the vehicle for satisfying the rights of holders of claims against, and equity interests in, a debtor's real and personal property, is the overriding purpose of a chapter 11 case. The primary objectives of the Plan are: (a) to alter the Debtor's capital structure to permit it to emerge from its chapter 11 case with a viable capital structure; (b) to maximize the value of the ultimate recoveries to all creditors on a fair and equitable basis; and (c) to settle, compromise or otherwise dispose of certain claims and interests on the terms that the Debtor believes to be fair and reasonable and in the best interests of its estate and creditors. The Plan provides for, among other things: (a) the cancellation of certain indebtedness in exchange for cash or other property of the Debtor, (b) the assumption or rejection of executory contracts and unexpired leases to which the Debtor is a party, and (c) the restructuring of obligations the Debtor owes to certain secured creditors.

**By order of the Court, dated December \_\_\_, 2012, this Disclosure Statement has been approved as containing "adequate information" for creditors of the Debtor in accordance with section 1125 of the Bankruptcy Code. The Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).**

**THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF ITS CREDITORS. ALL CREDITORS ARE URGED TO VOTE IN FAVOR OF THE PLAN NO LATER THAN THE VOTING DEADLINE OF 4:00 P.M., EASTERN TIME, ON JANUARY \_\_, 2013.**

The requirements for Confirmation, including the vote of creditors to accept the Plan and certain of the statutory findings that must be made by the Bankruptcy Court, are set forth under the caption "VOTING AND CONFIRMATION OF THE PLAN."

**IN SOME INSTANCES, PARTIES RECEIVING THIS DISCLOSURE STATEMENT ARE NOT ENTITLED TO VOTE ON THE PROPOSED PLAN AND, ACCORDINGLY, HAVE NOT BEEN PROVIDED WITH BALLOTS. FOR EXAMPLE, IF YOU HAVE FILED A CLAIM AGAINST DEBTOR, BUT THE DEBTOR IS SEEKING BY OBJECTION THE TOTAL DISALLOWANCE OF YOUR CLAIM, YOU ARE NOT ENTITLED TO VOTE ON THE PLAN UNLESS, PURSUANT TO RULE 3018**

86534

**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (THE "BANKRUPTCY RULES"), THE COURT TEMPORARILY ALLOWS YOUR CLAIM FOR VOTING PURPOSES. THUS, IF YOU HAVE FILED A CLAIM THAT THE DEBTOR IS SEEKING TO DISALLOW IN ITS ENTIRETY, YOU WILL NOT BE PERMITTED TO VOTE ON THE PLAN UNLESS (A) YOU FILE A REQUEST WITH THE COURT FOR THE TEMPORARY ALLOWANCE OF YOUR CLAIM FOR VOTING PURPOSES PRIOR TO THE VOTING DEADLINE AND (B) THE COURT RULES ON THAT REQUEST PRIOR TO THE CONFIRMATION HEARING.**

_____

**No person is authorized by the Debtor in connection with the Plan or the solicitation of votes for the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits attached hereto or incorporated by reference or referred to herein, and if given or made, such information or representation may not be relied upon as having been authorized by the Debtor. While the Debtor will furnish to creditors entitled to vote on acceptance of the Plan such additional information as may be required by applicable law prior to the January ___, 2013 Voting Deadline, the delivery of this Disclosure Statement or any such additional information will not under any circumstances imply that the information herein is correct as of any time subsequent to the date hereof.**

## OVERVIEW OF THE PLAN

**Summary of Classes and Treatment of Claims**

The classification of Claims, the estimated aggregate amount of Claims in each Class, and the amount and nature of distributions to holders of Claims in each Class, are summarized in the following table.

The dollar amounts in the following table -- shown as the estimated aggregate amount of Allowed Claims that are expected in each Class -- constitute the Debtor's estimates as of the date of this Disclosure Statement of what the Claim amounts will be on the Effective Date. The estimated Claim amounts include the Debtor's estimates of the amounts of Claims upon resolution of all Disputed Claims. The distributions to be received by creditors in certain Classes could change if those estimates are not accurate.

_As discussed more fully below, the recovery on General Unsecured Claims depends on a number of variables, including the amount of Allowed Administrative Claims and Allowed Priority Claims. If Allowed Administrative Claims or Allowed Priority Claims exceed, by a material amount, the Debtor's current estimate of those Claims ,holders of General Unsecured Claims could receive little, if anything, on their Claims._

86534

2

| Class | Type and Estimation of Claim | Summary of Treatment |
|---|---|---|
| Class A | Priority Claims.<br>Estimated Total Claim Amount: $0 | **Unimpaired.** Pursuant to sections 1129(a)(9)(A)and (B) of the Bankruptcy Code, unless otherwise agreed, each holder of an Allowed Class A Claim will be paid in full, in cash, in full satisfaction of its Allowed Claim in Class A. |
| Classes B-1, B-2, B-3, B-4, and B-5 | Secured Claims.<br>Estimate Total Claim Amount: $1,867,337 | In full satisfaction of their Allowed Claims, the holders of Allowed Claims in Classes B-1, B-2, B-3, B-4, and B-5 shall receive the following:<br><br>a.    The holder of Allowed Claims in Class B-1 (PNC) shall receive the following in full satisfaction of its Allowed Secured Claims:<br><br>i.    The Debtor will pay: (w) $799,921.06, or the amount owed on the Effective Date, whichever is less, to PNC on the promissory note dated April 19, 2004, (Acct. No. 1266) as it may have been amended from time to time ("Note 1"); (x) $178,021.10, or the amount owed on the Effective Date, whichever is less, to PNC on the promissory note dated April 19, 2004, (Acct. No. 1274) as it may have been amended from time to time ("Note 2"); (y) $92,497.99, or the amount owed on the Effective Date, whichever is less, to PNC on the promissory note dated October 5, 2005, (Acct. No. 1259) as it may have been amended from time to time ("Note 3"); and (z) $30,567.25, or the amount owed on the Effective Date, whichever is less, to PNC on the promissory note dated January 25, 2005, (Acct. No. 0089) as it may have been amended from time to time ("Note 4"), together with simple interest at 5.25% per annum, amortized over a term of 180 months with any unpaid balance coming due with 60th month after the Effective Date, with no prepayment penalty and upon request, with the Debtor executing loan documents in a form and substance acceptable to PNC.  The payment terms of the restructured obligations shall be as follows: the Debtor will make equal monthly payments not to exceed $5,738.00 on Note 1, $1,326.00 on Note 2, $651.00 on Note 3, and $232.00 on Note 4.  PNC shall retain its security interest in collateral with the same validity and priority as on the Petition Date (the "PNC Collateral").<br><br>ii.    The balance, if any, of PNC's Claim shall be paid as a Class C Claim. |

86534

b.     The holder of an Allowed Claim in Class B-2 (HNB) shall receive the following in full satisfaction of its Allowed Secured Claims:

i.     The Debtor will pay $0 to HNB on the promissory note dated May 18, 2010, as an Allowed Secured Claim. HNB's security interest evidenced by UCC filing OH00143467383 shall be stripped and discharged as of the Effective Date.

ii.     The balance of HNB's Claim shall be paid as a Class C Claim.

c.     The holder of an Allowed Claim in Class B-3 (IRS) shall receive the following in full satisfaction of its Allowed Secured Claims:

i.     The Debtor will pay $264,582.00, or the amount owed on the Effective Date, whichever is less, to the IRS as an Allowed Priority Tax Claim.

d.     The holder of an Allowed Claim in Class B-4 (Aerolite) shall receive the following in full satisfaction of its Allowed Secured Claims:

i.     The Debtor will pay $0 to Aerolite on the promissory note dated April 30, 2008, as an Allowed Secured Claim.  Aerolite's mortgage filed as document no. 20087030030487 in the Stark County Recorder's office shall be stripped and discharged as of the Effective Date.

ii.     The balance of Aerolite's Claim shall be paid as a Class C Claim.

e.     The holder of an Allowed Claim in Class B-5 (Treasurer) shall receive the following in full satisfaction of its Allowed Secured Claims:

i.     The Debtor will pay $41,300 to the Treasurer as an Allowed Secured Claim over sixty (60) months commencing the first month after the Effective Date, together with interest at the statutory rate.

Class C     Allowed Non-Priority Unsecured Claims

Estimated Total Claim Amount:$849,216 (includes the unsecured portion of HNB's and Aerolite's Secured Claims)

**Impaired:** Each holder of an Allowed Class C Claim will receive, in payments no less than annually for 5 years, a Pro Rata portion of Distributable Cash with such payments commencing in the first calendar year after the effective date, but in no event, no later than March 31, 2014.  The total amount of Distributable Cash available for distribution equals $85,568.00 The net amount estimated to be available for payment to Allowed Class C Claims is $84,568.00.

86534

4

| Class D | Allowed Interests | Each holder of an Allowed Interest shall retain such Interest as provided for in the Plan. |
|---------|-------------------|-------------------------------------------------------------------------------------------|

**Summary Regarding Assertion and Treatment of Administrative Claims**

Administrative Claims include Claims for costs and expenses of administration allowed under sections 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after April 19, 2012, (the "Petition Date"), to preserve the Estate and operate the business of the Debtor (such as payments for leased equipment and premises); (b) claims under section 507(b) of the Bankruptcy Code arising from the Debtor's failure, if any, to provide adequate protection for the Debtor's use of cash collateral; (c) compensation for legal, financial, and business advisory, accounting, and other services, and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; and (d) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

Except as otherwise provided in the Plan, requests for payment of Administrative Claims, unless previously Filed, must be Filed and served on the Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 30 days after the Confirmation Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Claims and that do not File and serve a request by the applicable bar date will be forever barred from asserting such Claims against the Debtor, its successors or its respective property. Objections to such requests must be Filed and served on the Debtor and the requesting party by 20 days after the Filing of the applicable request for payment of Administrative Claims.

Professionals or other entities requesting compensation or reimbursement of expenses pursuant to section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered before the Effective Date must File and serve on the Debtor or such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such claim no later than 45 days after the Confirmation Date. Objections to any such claim must be Filed and served on the Debtor and the requesting party by the earlier of (a) 65 days after the Confirmation Date and (b) 20 days after the Filing of the applicable request for payment of the claim.

**Ordinary Course Liabilities**

Except as provided in Article III of the Plan, holders of Administrative Claims based on liabilities incurred by the Debtor in the ordinary course of its business will not be required to File or serve any request for payment of such Claims. Such Claims will be satisfied pursuant to Article III of the Plan.

**Priority Tax Claims**

Unless such holder and the Debtor or its successors or assigns agree to other terms, or a final order of the Court provides for other terms, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each holder of an Allowed Priority Tax Claim will be paid, in full subject to Article III of the Plan.

86534

Subject to Article III of the Plan, the Debtor will pay, in full, in cash over time only those Allowed Priority Tax Claims. Such payment will be made no later than the 60 months after the Petition Date. The Debtor estimates Priority Tax Claims to be $265,868.

## U.S. Trustee Fees

Pursuant to section 1930(a)(6) of title 28 of the United States Code, post-Confirmation quarterly fees due and payable to the United States Trustee will be paid by the Debtor until such time as the case is converted or dismissed, whichever occurs first.

## Sources of Cash to Make the Plan Distributions

Cash necessary for distributions under the Plan will be generated from the Debtor's post-petition income, and proceeds, if any, from sales of assets, and proceeds of Avoidance Actions. The Debtor estimates that distributions under the Plan for Administrative Claims, Priority Tax Claims, and Class A Claims will require not less than $290,000. In addition, the Debtor anticipates that it will have at approximately $84,568.00 in cash from its income for distribution to holders of Allowed Claims in Class C after all distributions, to holders of Administrative Claims, Priority Tax Claims, and Class A Claims. Accordingly, the Debtor expects that it will be able to make all payments required under the Plan to the holders of Allowed Claims in Classes A through C.

The Debtor's projected ordinary income to fund the plan is shown on Exhibit 3 attached hereto. The Debtor anticipates sufficient future ordinary income for the period required to fund payments under its Plan.

## Conditions Precedent to Confirmation and Consummation of the Plan

As set forth below, there are several conditions precedent to Confirmation and to the Effective Date.

## Conditions to Confirmation

The Court will not enter the Confirmation Order unless, and until, each of the following conditions has been satisfied or waived (if waivable):

1. The Court will have entered an order approving this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code; and

2. The Confirmation Order will be reasonably acceptable to the Debtor, in form and substance.

In addition to the foregoing conditions to Confirmation, there are a number of substantial requirements under the Bankruptcy Code that must be satisfied for the Plan to be confirmed. See "VOTING AND CONFIRMATION OF THE PLAN - Confirmation."

86534

6

**Conditions to Effective Date**

The Effective Date is defined in the Plan as a Business Day, as determined by the Debtor, and before which: (a) no stay of the Confirmation Order is in effect; (b) the Confirmation Order has not been vacated; and (c) all conditions to the Effective Date have been satisfied. The Plan provides that the following conditions must be satisfied or waived (if waivable) before the Plan will be consummated and the Effective Date will occur:

1. The Court will have entered the Confirmation Order;

2. The Court will have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Debtor, and all entities to be formed under the Plan to take all actions necessary or appropriate to implement the Plan; and

**AS DESCRIBED BELOW UNDER THE HEADING "GENERAL INFORMATION REGARDING THE PLAN -- LEGAL EFFECTS OF THE PLAN," CONFIRMATION AND THE OCCURRENCE OF THE EFFECTIVE DATE WILL HAVE A MATERIAL IMPACT ON CERTAIN LEGAL AND EQUITABLE RIGHTS OF THE HOLDERS OF CLAIMS.** Pursuant to Bankruptcy Rule 2002(f)(7), if the Court confirms the Plan pursuant to section 1129 of the Bankruptcy Code, the Debtor will file and serve on all parties in interest a notice regarding the entry of the Confirmation Order and certain of the legal effects of the Plan described below.

**Modification or Revocation of the Plan; Exculpation and Limitation of Liability; Severability**

### Modification of the Plan

Subject to the restriction on modifications set forth in section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify the Plan before its substantial consummation.

### Revocation of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will: (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor's real or personal property; or (2) prejudice in any manner the rights of the Debtor.

### Exculpation and Limitation of Liability

Except as otherwise specifically provided in the Plan, the Debtor in its capacity as such, any of its respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents, and any of such parties' successors and assigns, will not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any holder of a Claim, or any other

86534

7

party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtor's Chapter 11 Case, negotiation and filing of the Plan, filing the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan, except for their willful misconduct, and in all respects will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### Severability of the Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### Determination of Tax Liability

Pursuant to section 505(b) of the Bankruptcy Code, the Debtor may request a determination of any unpaid liability of the Estate for any federal income tax incurred during the administration of its Chapter 11 Case by submitting a tax return for such tax, together with payment of the tax, if any, shown thereon, and a request for such a determination to the Internal Revenue Service. The Debtor reserves the right, to the extent it deems necessary and appropriate, to request similar determinations of any unpaid liability of the Estate for any other taxes (including, without limitation, any state or local taxes) incurred during the administration of its Chapter 11 Case by submitting a tax return for such other tax, together with payment of the tax, if any, shown thereon, and a request for such a determination to the appropriate governmental unit charged with the responsibility for collection or determination of such tax.

## THE DEBTOR AND ITS CHAPTER 11 FILING

**Background**

Navarre Industries, Inc. was established in May 1991 for the purpose of value adding, assembling and brokering materials to the fuel components industries. The Debtor began by brokering extrusions through "just in time" inventory practices. The Debtor's primary focus was to manufacture and value add to its customers purchased products. Through the first 10 years of operation, the Debtor became very a significant supplier in its customers' supply chains. It developed products and practices that greatly enhanced its customers' efficiencies and products.

In 2006-2007 the Debtor began to diversify and began soliciting business in the building products industry. While the Debtor was successful in this marketing strategy and had begun a

86534

significant new business model that had great promise, collapse of the housing market damaged the Debtor's business. The Debtor's sales were nearly cut in half as a result after the Debtor had made a significant investment in tooling for building products.

In 2008, the Debtor sought to continue its growth in the fueling components business while the housing market was anticipated to recover. The Debtor set up production lines to build valve components for the Debtor's customers and ultimately began production of a new dispensing spout in late 2009. These new products ordinarily would have provided sufficient profits to carry the Debtor through the difficult financial times through returns in profits and cash flows.

With the economy suffering in both of its markets (fuel components and building products), poor demand has reduced the cash and profit requirements necessary to continue on a path to service its long term debt that was taken on. The Debtor reduced costs, and has discussed the long term outlooks with its existing customers, there are insufficient cost cuts that can be made and increased sales to avoid the chapter 11 filing.

The Debtor filed the chapter 11 petition to stabilize its business in a way that will allow it to rebuild its business in new markets where opportunities exist, and to restructure its finances.

**The Debtor's Secured Debt**

The Debtor financed operations through credit agreements with PNC Bank and Huntington National Bank. Set out below is a list of the Debtor's secured creditors and the amount of their debts as of the Petition Date:

| Secured Creditors | Petition Date Debt Amount |
|---|---|
| PNC | $1,101,000 |
| Huntington National Bank | $206,591 |
| Aerolite | $305,505 |
| Treasurer | $41,300 |
| Total | $1,654,396 |

**Post-Petition Operations**

During the postpetition period, the Debtor has continued to operate and manage its business. During its operation under protection of the Bankruptcy Court, the Debtor also has taken significant steps toward reorganizing its finances.

The Debtor reduced it operating costs during its chapter 11 case. This enabled the Debtor to end its operations that lost money, to pay adequate protection payments to PNC Bank and Huntington National Bank, and pay additional expenses related to its Chapter 11 case. The Debtor has returned to profitability as shown on Exhibit 3 attached hereto and will be able to make a meaningful distribution to its unsecured creditors.

86534

9

**The Debtor's Professional Advisors**

The Court authorized the Debtor's retention of: (a) Anthony J. DeGirolamo to serve as Debtor's counsel; (b) The Phillips Organization as accountants and financial advisors.

**Bar Dates**

### General Bar Date

On July 11, 2012, the Court entered the Bar Date Order, which established the bar date for filing of Proofs of Claim and approved the form and manner of notice of the bar date. Generally, Proofs of Claim and Interests were required to be filed no later than August 13, 2012. The Debtor's counsel served a notice of the bar date on known creditors on July 12, 2012.

### Administrative Bar Date

Through the Confirmation Order the Debtor will seek the following bar dates for administrative claims:

- 30 days after the Confirmation Date for all administrative expenses of the Debtor's chapter 11 case, with the specific exception of a request for compensation and/or reimbursement of expenses for the Debtor's retained professionals.

- 45 days after Confirmation Date for requests for compensation and reimbursement or expenses for the Debtor's retained professionals.

**Extension of Time to Assume or Reject Real Property Leases**

Section 365 of the Bankruptcy Code requires the Debtor to seek to assume or reject any unexpired leases of non-residential real property to which it is a party within 60 days of the commencement of its bankruptcy case. Pursuant to Article VII of the Plan, the Debtor will assume or reject all remaining executory contracts and non-residential leases on the Effective Date.

**Investigation of Avoidance Actions**

The Debtor intends to investigate actions it may have under chapter 5 of the Bankruptcy Code, including actions under sections 544, 542 and 548 of the Bankruptcy Code (collectively "Avoidance Actions"). Pursuant to the terms of the Plan, the right to pursue the Avoidance Actions will be reserved by the Debtor. The Debtor will have the right, but not the obligation to pursue any Avoidance Action. The Debtor is currently aware of no Avoidance Actions.

86534

# THE DEBTOR'S PLAN

## Vesting of Property

On the Confirmation Date, all property of the Estate will vest in the Debtor and its transferees, free and clear of all security interests, liens, encumbrances, charges and/or interests, except as specifically set forth in the Plan. The Plan provides that certain holders of Allowed Secured Claims will retain their liens and mortgages until paid as provided under the Plan.

## Preservation of Rights of Action

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, pursuant to section 1123(b) of the Bankruptcy Code, the Debtor, and its successors and assigns retain and may enforce any claims, rights, and causes of action that the Debtor or the Estate may hold against any entity, including, but not limited to, any Avoidance Actions. The Debtor in its capacity as reorganized Debtor shall be authorized and empowered to prosecute and/or settle any such claims, rights, or causes of action.

## Releases by Recipients of Distributions

Except as otherwise provided in the Plan, each entity receiving a distribution pursuant to the Plan on account of its Allowed Claim will be deemed to forever release, waive, and discharge all known and unknown Claims of any nature that such entity has, had, or may have, prior to Effective Date against the Debtor to the fullest extent permitted under applicable law. The Confirmation Order will enjoin the prosecution, whether directly, derivatively, or otherwise, of any Claim, debt, right or cause of action released or to be released pursuant to the Plan.

## Release of Liens

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estate, or against property that is collateral for any obligation of the Debtor will be fully released and discharged, and all of the rights, title, and interests of any holder of such mortgages, deeds of trust, liens or other security interests will revert to the Debtor and its successors and assigns.

## Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes

The Debtor and any entity formed under the Plan will be authorized to: (a) execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents contemplated by or entered into in connection with the Plan; and (b) take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or any entity formed under the Plan will be authorized to certify or attest to any of the foregoing actions. Pursuant to section 1146(c) of the Bankruptcy Code: (a) the creation or transfer of any mortgage, deed of trust, or other security interest; (b) the making or assignment of

86534

any lease or sublease; (c) the making or delivery of any deed or other instrument, in furtherance of or in connection with the Plan, including any agreements of consolidation, deeds, bills of sale, assignments, assumptions, or delegations of any asset, property, right, liability, duty or obligation; or (d) the making of any instruments of transfer executed in connection with any of the foregoing will not be subject to any stamp tax, real estate transfer tax, or similar tax.

**RISK FACTORS**

The risk factors enumerated below assume Confirmation and the consummation of the Plan, and the transactions contemplated by the Plan, and do not include matters that could prevent Confirmation. [See "OVERVIEW OF THE PLAN -- Conditions Precedent to Confirmation and Consummation of the Plan" and "VOTING AND CONFIRMATION OF THE PLAN" for discussions of such matters. ] Prior to voting on the Plan, each holder of a Claim against the Debtors should carefully consider the risk factors enumerated or referred to below as well as all of the information contained in this Disclosure Statement.

**Ability to Make Plan Distributions**

The following is an estimation of claims and administrative expenses, which the Debtor will have to pay in cash on or about the Effective Date:

| | |
|---|---|
| Administrative Claims, including | |
| Professional fees: | $25,000 |
| Class A Claims | $0.00 |
| Priority Tax Claims: | $307,568 |

The Debtor anticipates that it will have sufficient funds to make all of the distributions to holders of Administrative Claims, Priority Tax Claims, and Allowed Class A Claims on the effective date. The funds for such distributions and funds for distributions to holders of Allowed Class C Claims will come from the proceeds of the Debtor's ordinary income, proceeds from sales of property, and proceeds of Avoidance Actions, if any and paid over time.

The Debtor's ability to make the distributions described above is dependent upon, among other things, the allowance of certain Claims in the amounts the Debtor has projected, which amounts are described below. In addition, distributions at the projected levels depend upon the Debtor's ability to generate income as anticipated in the Plan.

**Allowance of Claims**

The ability of the Debtor to make the distributions under the Plan at the levels contemplated by the Plan depends upon certain Claims being allowed at levels projected by the Debtor including the following:

**Class A Claims**

The Debtor has projected that it will not be required to pay any Class A Claims. If Class A Claims exceed, by a material amount, the Debtor's projections and if the Debtor pays such

86534

12

Claims, then the Debtor may not have sufficient funds to make the distributions called for under the Plan and the Plan could be deemed to be not feasible, thereby preventing Confirmation or consummation.

### Priority Tax Claims

The Debtor has projected that it will be required to pay significant Priority Tax Claims. If Priority Tax Claims exceed, by a material amount, the Debtor's projections and if the Debtor pays such Claims, then the Debtor may not have sufficient funds to make the distributions called for under the Plan and the Plan could be deemed to be not feasible, thereby preventing Confirmation or consummation.

### Administrative Claims

In calculating distributions under, and in determining the feasibility of, the Plan, the Debtor has estimated Administrative Claims to be approximately $25,000, including fees of Professionals. If Allowed Administrative Claims exceed the Debtor's estimates by a material amount, the Debtor may have insufficient funds to make distributions under the Plan; the Plan could be determined to be not feasible; and the Court could refuse to confirm the Plan.

## DISTRIBUTIONS UNDER THE PLAN

### Means of Cash Payments

Cash payments made pursuant to the Plan will be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor or by wire transfer from a domestic bank, at the option of the Debtor.

### Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Debtor and all entities formed under the Plan will comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements, and the Debtor and all entities formed under the Plan will be authorized to pay excise or other employer-related taxes. The Debtor and all entities formed under the Plan will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

Notwithstanding any other provision of the Plan, each entity receiving a distribution of cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.

### Setoffs

Pursuant to section 553 of the Bankruptcy Code or any applicable nonbankruptcy law, the Debtor may, set off against any claims, debts, rights and causes of action of any nature that the Debtor, or any entity to be formed under the Plan, may hold against the holder of an Allowed

86534

13

Claim, and the distributions to be made pursuant to the Plan on an Allowed Claim (before any distribution is made with regard to such Claim). Neither the failure to effect such a setoff, nor the allowance of any Claim hereunder, will constitute a waiver or release of any claims, debts, rights and causes of action against such holder.

**Treatment of Disputed Claims**

No payment or distribution will be made on a Claim if any portion of the Claim is disputed until all of the objections to the Claim, or portion of the Claim, have been determined by a Final Order of the Court. Any payment or distribution that otherwise would have been made on account of such Claim had it been allowed, will be held in reserve by the Debtors (in the "Unpaid Claims Reserve") pending a determination of the allowability of the Claim.

In the event that a Disputed Claim is resolved by the allowance of such Claim in whole or in part, the Debtor will make the appropriate distribution to the holder of the Claim from the Unpaid Claims Reserve in accordance with the provisions of the Plan. When all Disputed Claims have been allowed or disallowed, all cash then remaining in the Unpaid Claims Reserve will be distributed Pro Rata to holders of Allowed Class C Claims.

**Authority to Prosecute Objections**

Except as otherwise provided in the Plan or pursuant to a Final Order, after the Effective Date, only the Debtor will have the authority to file objections or settle, compromise, withdraw, or litigate to judgment objections to Claims.

## GENERAL INFORMATION REGARDING THE PLAN

**Classification and Treatment of Claims**

### In General

All Claims, except Administrative Claims and Priority Tax Claims, are placed in the Classes set out in the Plan, as summarized below. In accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

**Treatment of Unimpaired Classes of Claims**

### Class A Claims:

On the Effective Date, each holder of an Allowed Class A Claim – Allowed Priority Claims – will, have its Claim paid in full. The Debtor does not anticipate that there will be any Allowed Class A Claims. In the event any Allowed Priority Claims exist, however, they will be treated as Class A Claims.

**Treatment of Impaired Classes of Claims**

**Class B-1 through B-5 Claims:**

In full satisfaction of Allowed Class B-5 through B-5 Claims, holders of Allowed Claims in Class will receive treatment as set forth on pages 3-4 herein above.

**Class C Claims:**

In full satisfaction of their Allowed Class C Claims, holders of Allowed Class C Claims will receive the following:

> <u>In General</u>. Each holder of an Allowed Class C Claim will receive a Pro Rata share of the Debtor's payments under the Plan. The holders of Allowed Class C Claims will receive their Pro Rata share of Cash totaling approximately $84,568.00 after deduction for all amounts paid to the holders of Allowed Class A Claims, Administrative Claims, and Priority Tax Claims. Allowed Class A Claims, Administrative Claims, and Priority Tax Claims are estimated to be $337,000. Such payment being in full satisfaction of their Allowed Class C Claims.

**No Accrual of Postpetition Interest**

Except as otherwise provided in the Plan, no holder of an Allowed Claim will be entitled to the accrual of postpetition interest, or the payment by the Debtors of postpetition interest on account of such Claim for any purpose.

**Payment of Administrative Claims**

**In General**

Except as specified in Article III of the Plan, and subject to the Confirmation Order, and unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtor, each holder of an Allowed Administrative Claim will receive from the Debtor, cash equal to the amount of such Allowed Administrative Claim on the Effective Date or, if the Administrative Claim is not allowed as of the Effective Date, 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, in full satisfaction of its Claim.

**Statutory Fees**

On the Effective Date the Debtor will pay Administrative Claims for fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation hearing, in cash equal to the amount of such Administrative Claims. In addition, pursuant to section 1930(a)(6) of title 28 of the United States Code, the Debtor will pay post-Confirmation quarterly fees due and payable to the United States Trustee until such time as the case is closed, converted, or dismissed, whichever occurs first.

86534

**Ordinary Course Liabilities**

Administrative Claims based on liabilities incurred by the Debtor in the ordinary course of business will be paid by the Debtor, following the Effective Date pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims; but only if such Administrative Claims are supported by the Debtor's books and records. If such Administrative Claims are not so supported, then holders of such Administrative Claims must comply with the provisions of Article III.4 of the Plan.

**Bar Date for Administrative Claims**

*General Bar Date Provisions*

Requests for payment of Administrative Claims must be Filed and served in accordance with the Confirmation Order. Holders of Administrative Claims are required to File and serve a request for payment of such Claims. If any Claim is not Filed and served by the Claim Bar Date it shall be forever barred and will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Debtor, and the requesting party by 20 days after the Filing of the applicable request for payment of the Administrative Claim.

*Professional Compensation*

Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered before the Confirmation Date (including compensation requested pursuant to section 503(b)(3) and (4) of the Bankruptcy Code by any Professional or other entity for making a substantial contribution in the Debtor's Chapter 11 Case) must File and serve on the Debtor, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, an application for final allowance of compensation and reimbursement of expenses no later than 45 days after the Confirmation Date. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtor, and the requesting party by the earlier of (a) 65 days after the Confirmation Date and (b) 20 days after the filing of the applicable request for payment of the Administrative Claims.

**Payment of Priority Claims and Priority Tax Claims**

Unless such holder and the Debtor, or its successor or assigns, agree to other terms, or a Final Order of the Court provides for other terms, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each holder of an Allowed Priority Claim and each holder of an Allowed Priority Tax Claim will be paid, on account of such claim, as follows:

Subject to Article III of the Plan, the Debtor will pay, in full, in cash no later than sixty (60) months after the Petition Date, only those Allowed Priority Claims and Allowed Priority Tax Claims.

86534

**Executory Contracts and Unexpired Leases**

**Assumptions and Rejections Generally**

Except as otherwise provided in the Plan, the Confirmation Order, or a Final Order, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtor will assume or reject all executory contracts and unexpired leases listed on the Debtor's schedule of executory contracts and unexpired leases filed in this case. Upon confirmation of the Plan, the Debtor is assuming the tolling agreement with Therma Tru.

**Claims Arising From Rejection; Bar Date For Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim will be forever barred and will not be enforceable against the Debtor and its respective property unless a proof of Claim is timely Filed and served on the Debtor pursuant to the procedures specified in the Bar Date Order or another order of the Court.

**Approval of Assumptions and Rejections**

The Confirmation Order will constitute an order of the Court approving the assumptions and rejections described in the Plan pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The order of the Court approving this Disclosure Statement, the Confirmation Order, or another order of the Court entered on or prior to the Confirmation Date may specify additional procedures for providing notice to each party whose executory contract is being assumed pursuant to the Plan.

**Releases by Recipients of Distributions**

Except as otherwise provided in the Plan, each entity receiving a distribution pursuant to the Plan on account of its Allowed Claim will be deemed to forever release, waive, and discharge all known and unknown claims of any nature that such entity has, had or may have prior to the Effective Date against the Debtors to the fullest extent permitted under applicable law. The Confirmation Order will enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, debt, right, or cause of action released or to be released under the Plan.

**Legal Effects of the Plan**

**Discharge**

Except as provided in the Plan or the Confirmation Order the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge, and release of all Claims, including any interest accrued on Claims from the Petition Date. Except as provided in the Plan or the Confirmation Order, Confirmation will (a) discharge the Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is allowed pursuant to

86534

17

section 502 of the Bankruptcy Code; or (iii) the holder of a Claim based on such debt has accepted the Plan; and (b) terminate all interests and other rights, if any, of equity security holders in the Debtor.

As of the Confirmation Date, except as provided in the Plan or Confirmation Order, all entities will be precluded from asserting against the Debtor, the Estate, and any entity to be formed under the Plan, any other or further Claims, debts, rights, causes or action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor and termination of all such interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor, and or any entity to be formed under the Plan, at any time, to the extent that such judgment relates to a discharged Claim.

### Injunction

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim, or other debt or liability that is discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts, or liabilities: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the Estate, or the property of the Debtor or any entities to be formed under the Plan and property transferred to such entities; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Estate, or the property of the Debtor or any entities to be formed under the Plan and property transferred to such entities; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, the Estate, or the property of the Debtor or any entities to be formed under the Plan and property transferred to such entities; (d) asserting a right of subordination of any kind against any debt, liability, or obligation due to the Debtor, or the Estate or the property of the Debtor or any entities to be formed under the Plan and property transferred to such entities; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

### Effect of Defaults Under the Plan

In the event the Debtor is unable to consummate the Plan on the terms set forth therein, creditors may reopen the Chapter 11 Case and seek the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or the dismissal of the Chapter 11 Case under section 1112 of the Bankruptcy Code.

## VOTING AND CONFIRMATION OF THE PLAN

The Bankruptcy Code requires, to confirm the Plan, that the Court make a series of findings concerning the Plan and the Debtor, including that:

86534

(a) the Plan complies with applicable provisions of the Bankruptcy Code including: (1) the Plan has classified Claims in a permissible manner; and (2) the disclosure required by section 1125 of the Bankruptcy Code has been made;

(b) the Debtor, as the Plan proponent, has complied with applicable provisions of the Bankruptcy Code;

(c) the Debtor has proposed the Plan in good faith and not by any means forbidden by law;

(d) any payment made, or to be made, by the Plan proponent or any person issuing securities acquiring property under the Plan, for services, costs, and expenses in the Debtor's case, or in connection with the Debtor's case, has been approved, or subject to approval by the Court as reasonable;

(e) the disclosures required under section 1129(a)(5) of the Bankruptcy Code concerning the identity and affiliations of persons who will serve as officers, directors, and voting trustees of the Debtor;

(f) the Plan has been accepted by the requisite votes of creditors (except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code (See "- Confirmation" and "- Acceptance or Cramdown"));

(g) the Plan is in the "best interests" of all holders of Claims in an impaired Class by providing to Creditors on account of such Claims property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless each holder of a Claim in such Class has accepted the Plan;

(h) if a Class of Claims is impaired under the Plan, at least one class of impaired Claims has voted to accept the Plan;

(i) the Plan is feasible, and Confirmation will likely not be followed the by a liquidation under chapter 7 or the need for further financial reorganization of the Debtor; and

(j) all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on Confirmation, have been paid (or the Plan provides for the payment of such fees on the Effective Date).

The Debtor anticipates that the Court will make such findings.

**Voting Procedures and Requirements**

Pursuant to the Bankruptcy Code, only classes of claims against or equity interests in a debtor that are "impaired" under the terms and provisions of a plan of reorganization are entitled

86534

to vote to accept or reject a plan. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified, other than by curing default and reinstating maturity. Under the Plan, Classes of Claims that are not impaired are *not* entitled to vote on the Plan and are deemed to have accepted the Plan. In addition, Classes of Claims that receive no distributions under the Plan are *not* entitled to vote on the Plan and are deemed to have rejected the Plan, unless such Class otherwise indicates acceptance. The classification of Claims is summarized, together with notations as to whether each Class of Claims is impaired or unimpaired, under the caption "OVERVIEW OF THE PLAN - Summary of Classes and Treatment of Claims."

Pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3018, the Court may estimate and temporarily allow a Claim for voting or other purposes. The Debtors may seek an order of the Court temporarily allowing, for voting purposes only, certain Disputed Claims.

In addition, the following voting procedures and standard assumptions will be used for purposes of tabulating ballots:

(a) The amount of a Claim that will be used to determine votes for or against the Plan will be either (a) the Claim amount listed on the schedules of liabilities Filed with the Court unless such Claim is listed on the schedules of liabilities as contingent, unliquidated, or disputed, (b) the liquidated amount specified in a proof of claim timely Filed with the Court that is not the subject of an objection, or (c) the liquidated amount specified in a Final Order. If the holder of a Claim submits a Ballot, but such holder has timely Filed a Proof of Claim, *and* (a) such holder's Claim is listed on the schedules of liabilities as contingent, unliquidated, or disputed, or (b) such holder's Claim is the subject of an objection, the Ballot will not be counted for purposes of determining acceptances or rejections of the Plan, in accordance with Rule 3018, unless the Court has temporarily allowed the Claim for the purpose of accepting or rejecting the Plan in accordance with Bankruptcy Rule 3018.

(b) Whenever a holder of a Claim casts more than one Ballot voting the same Claim prior to the Voting Deadline, the latest dated Ballot received prior to the Voting Deadline will be deemed to supersede and revoke any prior Ballot.

(c) Holders of Claims must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split their votes. Accordingly, the Debtor will treat as an acceptance any Ballot (or multiple ballots with respect to multiple Claims within a single Class) that partially rejects and partially accepts the Plan.

(d) Ballots that fail to indicate an acceptance or rejection of the Plan, but which are otherwise properly executed and received prior to the Voting Deadline, will be tabulated as an acceptance.

(e) If no vote to accept or reject the Plan is received with respect to a particular class, the Debtor requests that such class be deemed to have voted to accept the Plan.

86534

**VOTING ON THE PLAN BY EACH HOLDER OF AN IMPAIRED CLAIM ENTITLED TO VOTE ON THE PLAN IS IMPORTANT.  IF YOU HOLD CLAIMS IN MORE THAN ONE CLASS, YOU MAY RECEIVE MORE THAN ONE BALLOT. YOU SHOULD COMPLETE, SIGN, AND RETURN EACH BALLOT YOU RECEIVE. PLEASE FOLLOW THE DIRECTIONS CONTAINED ON THE ENCLOSED BALLOT CAREFULLY.**

Votes cannot be transmitted orally.  Accordingly, you are urged to return your signed and completed ballot promptly.

**IF YOU HAVE A CLAIM THAT IS IMPAIRED UNDER THE PLAN ENTITLING YOU TO VOTE AND YOU DID NOT RECEIVE A BALLOT, RECEIVED A DAMAGED BALLOT, OR LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS DISCLOSURE STATEMENT OR THE PLAN, PLEASE CALL OR WRITE TO ANTHONY J. DEGIROLAMO, ESQ., 116 CLEVELAND AVE. N.W., SUITE 307, CANTON, OHIO 44702, (330) 588-9700.**

**Confirmation Hearing**

The Bankruptcy Code requires that the Court, after notice, hold a hearing on whether the Debtors have fulfilled the Confirmation requirements of section 1129 of the Bankruptcy Code. The Confirmation hearing has been scheduled for January ___, 2013, at ___ a.m. Eastern Time, before the Honorable Russ Kendig, in the United States Bankruptcy Court, Northern District of Ohio, Eastern Division, Ralph Regula Federal Courthouse, 401 McKinley Avenue, S.W., Canton, Ohio 44702.  The Confirmation hearing may be adjourned from time to time by the Court without further notice, except for an announcement of the adjourned date made at the Confirmation hearing.  Any objection to Confirmation must be made in writing, and must specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector.  Any such objections must be Filed and served upon the persons designated in the notice of the Confirmation hearing.

**Confirmation**

At the Confirmation hearing, the Court will confirm the Plan only if the requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for Confirmation are that the Plan: (a) is accepted by the requisite holders of Claims in impaired Classes or, if not so accepted, is "fair and equitable" and "does not discriminate unfairly" as to the nonaccepting Class; (b) is in the "best interests" of each holder of a Claim in each impaired Class; (c) is feasible; and (d) complies with the applicable provisions of the Bankruptcy Code.

**Acceptance or Cramdown**

A plan is accepted by an impaired class of claims if holders of at least two-thirds in dollar amount and a majority in number of claims of that class vote to accept the Plan.  Only those holders of claims who actually vote (and are entitled to vote) to accept or to reject a plan count in this tabulation.  A plan is accepted by an impaired class of interests if holders of at least two-thirds of the number of shares in such class vote to accept the plan.  As with claims, only those

86534

holders of interests who actually return a ballot count in this tabulation. In addition to this voting requirement, section 1129 of the Bankruptcy Code requires that a plan be accepted by each holder of a claim or interest in an impaired class or that the plan otherwise be found by the Court to be in the best interests of each holder of a claim or interest in an impaired class. See "VOTING AND CONFIRMATION OF THE PLAN - Best Interests Test." In addition, the impaired classes must accept the Plan for the Plan to be confirmed without application of the fair and equitable test in section 1129(b) of the Bankruptcy Code discussed below. The Bankruptcy Code contains provisions for confirmation of a plan even if it is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These so-called "cramdown" provisions are set forth in section 1129(b) of the Bankruptcy Code. As indicated above, a plan may be confirmed under the cramdown provisions if, in addition to satisfying the other requirements of section 1129 of the Bankruptcy Code, it (a) is "fair and equitable" and (b) "does not discriminate unfairly" with respect to each class of claims or interests that is impaired under, and has not accepted, a plan. The "fair and equitable" standard, also known as the "absolute priority rule," requires, among other things, that unless a dissenting class of unsecured claims or class of interests receives full compensation for its allowed claims or allowed interests, no holder of allowed claims or interests in any junior class may receive or retain any property on account of such claims or interests. With respect to a dissenting class of secured claims, the "fair and equitable" standard requires, among other things, that holders either (i) retain their liens and receive deferred cash payments with a value as of an effective date equal to the value of their interest in property of the estate or (ii) otherwise receive the indubitable equivalent of their secured claims.

The Debtor believes that, if necessary, the Plan may be crammed down over the dissent of certain Classes of Claims, in view of the treatment proposed for such Classes. If necessary and appropriate, the Debtor intends to modify the Plan to permit cramdown of dissenting Classes of Claims. No assurance exists, however, that the "cramdown" requirements of section 1129(b) of the Bankruptcy Code would be satisfied even if the Plan treatment provisions were amended or withdrawn as to one or more creditors or interest holders.

The requirement that the Plan not "discriminate unfairly" means, among other things, that a dissenting Class must be afforded substantially similar and equal treatment as provided to other Classes of equal rank. The Debtor does not believe that the Plan discriminates unfairly against any Class that may not accept or otherwise consent to the Plan.

Subject to the conditions set forth in the Plan, a determination by the Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code will not limit or affect the Debtor's ability to modify the Plan to satisfy the provision of section 1129(b) of the Bankruptcy Code.

The Debtor anticipates that the Plan will be accepted by all Classes of Claims. As a result, the absolute priority rule will not be applicable. Rather, with the acceptance of the Plan by all Classes of impaired Claims, the Debtor will be able to achieve a Confirmation.

86534

**Best Interests Test**

Notwithstanding acceptance of the Plan by each impaired Class, to confirm the Plan, the Court must determine that the Plan is in the best interests of each holder of a Claim in any impaired Class that has not voted to accept the Plan. Accordingly, if an impaired Class does not vote unanimously to accept the Plan, the "best interests" test requires that the Court find that the Plan provides to each member of such impaired Class a recovery on account of each member's Claim that has a value, as of the Effective Date, at least equal to the value of the distribution that each such member would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each impaired Class of Claims would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code, the Court must first determine the aggregate dollar amount that would be available if the Chapter 11 Case were converted to a chapter 7 case under the Bankruptcy Code and the Debtor's assets were liquidated by a chapter 7 trustee (the "Liquidation Value"). The Liquidation Value of the Debtor would consist of the net proceeds from the disposition of the assets of the Debtor augmented by any cash held by the Debtor. The Liquidation Value available to creditors holding unsecured Claims would then be reduced by, among other things, (a) the Claims of secured creditors to the extent of the value of their collateral, (b) the costs, fees, and expenses of the liquidation, as well as other administrative expenses of the Debtor's chapter 7 case, (c) unpaid Administrative Claims of the Chapter 11 Case, (d) Priority Tax Claims, including prepetition state and federal tax claims entitled to priority treatment, and (e) Class A Claims. The Debtor's costs of liquidation of a chapter 7 case, thus would include the compensation of trustees, as well as their counsel, and other professionals retained by such trustees, asset disposition expenses, applicable taxes, litigation costs, Claims arising from the operation of the Debtor business during the pendency of the chapter 7 case, and all unpaid Administrative Claims incurred by the Debtor during the Chapter 11 Case that are allowed in the chapter 7 case. The liquidation itself would trigger certain priority Claims, and would likely accelerate the payment of other priority Claims, such as certain deferred income tax obligations, that would otherwise be payable in the ordinary course of business. These priority Claims would be paid in full out of the net liquidation proceeds, after payment of Secured Claims, before the balance would be made available to pay unsecured Claims. The Debtor believes that the liquidation would also generate a significant increase in unsecured Claims, such as executory contract and unexpired lease rejection Claims and tax and other governmental Claims, on an accelerated basis.

A liquidation analysis of the Debtor is set forth in Exhibit 2 to this Disclosure Statement. The liquidation analysis is based on a number of estimates and assumptions as follows:

These estimates and assumptions are subject to significant uncertainties, including estimates and assumptions relating to the proceeds of sales of assets, the timing of such sales, and values and certain tax matters. While the Debtor believes that these estimates and assumptions are reasonable for the purpose of preparing a hypothetical chapter 7 liquidation analysis, there can be no assurance that such estimates and assumptions would be valid if the Debtor's assets were, in fact, liquidated.

86534

The Debtor believes, and its liquidation analysis demonstrates, that a chapter 7 liquidation of the Debtor's assets would result in a recovery to holders of Allowed Class C Claims of no more than $0 less amounts paid to holders of Allowed Administrative and Class A Claims, and Priority Tax Claims. That is because, in a liquidation, the Debtor's unencumbered assets would generate insufficient proceeds to pay the costs of liquidation, and holders of Administrative and Priority Claims.

**Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Plan). For purposes of determining whether the Plan meets this requirement, the Debtor has analyzed its ability to meet their respective obligations under the Plan and the prospects of the business to be operated by the Debtor. The Debtor believes that the Plan meets the feasibility requirements of the Bankruptcy Code.

**FEDERAL INCOME TAX CONSIDERATIONS
OF CONSUMMATION OF THE PLAN**

**General**

A DESCRIPTION OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN IS PROVIDED BELOW. THIS DESCRIPTION IS BASED ON THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), THE TREASURY REGULATIONS ISSUED THEREUNDER, AND ADMINISTRATIVE DETERMINATIONS OF THE IRS IN EFFECT AS OF THE DATE OF THIS DISCLOSURE STATEMENT. CHANGES IN THESE AUTHORITIES, WHICH MAY HAVE RETROACTIVE EFFECT, OR NEW INTERPRETATIONS OF EXISTING AUTHORITY MAY CAUSE THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO DIFFER MATERIALLY FROM THE CONSEQUENCES DESCRIBED BELOW. MOREOVER, NO RULINGS HAVE BEEN REQUESTED FROM THE IRS, AND NO LEGAL OPINIONS HAVE BEEN REQUESTED FROM COUNSEL WITH RESPECT TO ANY TAX CONSEQUENCE OF THE PLAN. NO TAX OPINION IS GIVEN BY THIS DISCLOSURE STATEMENT. THIS DESCRIPTION DOES NOT COVER ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO THE DEBTOR OR HOLDERS OF CLAIMS. THE DESCRIPTION, MOREOVER, IS LIMITED TO FEDERAL INCOME TAX CONSEQUENCES.

FOR THESE REASONS, THE DESCRIPTION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE PLAN.

86534

## Federal Income Tax Consequences to Debtors

### Net Operating Loss Carryforwards

Tax losses from the Debtor's business have resulted in the Debtor having a significant net operating loss carry forward ("NOL") for federal income tax purposes. In general, an NOL may be carried forward up to 20 years to offset income that would otherwise be subject to federal income tax. The NOL is subject to reduction or elimination for a number of reasons. First, the NOL could be reduced or eliminated as a result of audit adjustments arising from current or future IRS examinations of the Debtor's tax returns. Second, the NOL could also be reduced or eliminated by any cancellation of debt ("COD") income recognized by the Debtor as a result of the attribution reduction rules discussed below. Third, the NOL could also be reduced or eliminated by any gain recognized on the disposition of assets pursuant to the Plan.

In evaluating the effect of the NOL on the Debtor's future tax liability, holders of Claims should note that the NOL carryforward amount and the annual limitation actually available to the Debtor each year if section 382 applies will depend upon facts about which there can be no certainty, including the Debtor's market value and the long-term tax-exempt rate on the Effective Date. The Debtor's actual income in future years, moreover, may be less than the amounts that have been projected, which would also reduce the present value of the NOL carryforward.

### Reduction of the Debtor's Indebtedness

Generally, the discharge of a debt obligation by a debtor for an amount less than the adjusted issue price gives rise to cancellation of indebtedness income ("COD"), which must be included in the Debtor's income. COD income is not recognized by a taxpayer that is a debtor in a chapter 11 case if the discharge is granted by the court or pursuant to a plan of reorganization approved by the court. The Plan, if approved, would enable the Debtor to qualify for this bankruptcy exclusion rule if they have any COD income.

If debt is discharged in a chapter 11 case, however, certain tax attributes otherwise available and of value to the debtor are reduced, in most cases by the principal amount of the indebtedness forgiven. Tax attributes subject to reduction include: (a) NOLs and NOL carryforwards; (b) most credit carryforwards; (c) capital losses and carryforwards; and (d) the tax basis of a debtor's depreciable and nondepreciable assets. These favorable attributes may therefore be reduced and would not be available to the Debtors in future years.

## Federal Income Tax Consequences to Holders of Claims

### General

The tax consequences of the Plan to a holder of a Claim will depend, in part, on the nature of the Claim, whether the holder is a corporation or an individual, the type of consideration received in exchange for the Claim, whether the holder reports income on the accrual or cash basis method, whether the holder has taken a bad debt deduction with respect to such Claim, and whether the holder receives distributions under the Plan in more than one taxable year.

86534

Holders of Claims will likely recognize gain or loss equal to the amount realized under the Plan in respect of their Claims less their respective tax bases in their Claims. The amount realized for this purpose will generally equal the sum of the cash and the fair market value of any other consideration received under the Plan in respect of their Claims. Any gain or loss recognized in the exchange will be capital or ordinary depending on the status of the Claim in the holder's hands. If a Claim is restructured under the Plan, the Original Issue Discount ("OID") rules contained in Section 1271 through 1274 of the Code will apply to the restructured debt. The OID rules require that all applicable debt instruments bear a minimum rate of interest that accrues regularly over time. Under section 1272 of the Code, this regular accrual is an economic accrual based on a minimum yield to maturity of the debt instrument. To the extent that the terms of a restructured debt do not provide for such accrual, the OID rules convert what may be denoted as principal into interest, which is deemed to accrue regularly over time, regardless of when it is actually paid. Even if a restructured debt instrument bears sufficient interest, if such interest is not paid regularly, the OID rules require that the interest be accrued so that it is spread regularly over the term of the restructured debt instrument. Thus, the OID rules may require a holder of a Claim to report income in excess of cash interest received, even when no cash interest is received.

### Bad Debt Deduction

A holder who, under the Plan, will receive in respect of a Claim an amount less than the holder's tax basis in such Claim will most likely be entitled in the year of receipt, or in an earlier year, to a bad debt deduction in some amount under section 166(a) of the Code. The rules governing the timing and amount of bad debt deductions place considerable emphasis on the facts and circumstances of the holder, the obligor, and the instrument with respect to which a deduction is claimed; holders of Claims are therefore urged to consult their tax advisors with respect to their ability to take such deduction.

## RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Debtor believes that the Confirmation and consummation of the Plan is preferable to all other alternatives. Consequently, the Debtor urges all holders of Claims to vote to accept the Plan and to evidence their acceptance by duly completing and returning their Ballots so that they will be received on or before 4:00 p.m., Eastern Time, on January ___, 2013.

November 15, 2012                          Navarre Industries Inc.

                                           /s/ Paul Miller
                                           By: Paul Miller
                                           Its: President

86534

# EXHIBIT 1

## PLAN OF REORGANIZATION

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION, CANTON

--------------------------------------------------------x
In re:                                           :     Case No. 12-61113
                                                 :
NAVARRE INDUSTRIES, INC.                         :     Chapter 11
an Ohio corporation,                             :
                                                 :     Judge Russ Kendig
            Debtor and                           :
            Debtor-in-Possession.                :
                                                 :
(Employer Tax I.D. No. 34-1680039)               :
--------------------------------------------------------x

## DEBTOR'S PLAN OF REORGANIZATION

Dated: November 15, 2012                 /s/ Anthony J. DeGirolamo
                                         Anthony J. DeGirolamo (0059265)
                                         Courtyard Centre Suite 307
                                         116 Cleveland Avenue NW
                                         Canton, Ohio 44702
                                         Telephone:  330-588-9700
                                         Facsimile:  330-588-9713
                                         E-mail:  ajdlaw@sbcglobal.net

                                         COUNSEL FOR THE DEBTOR
                                         AND DEBTOR IN POSSESSION

# TABLE OF CONTENTS

*INTRODUCTION* ........................................................................................................ *1*

*ARTICLE I* ................................................................................................................. *1*

*DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME* .... *1*

   **A.** **Defined Terms** ............................................................................................. 1

   **B.** **Rules Of Interpretation And Computation Of Time** .................................. 7
      1. Rules of Interpretation ................................................................................7
      2. Computation of Time ..................................................................................8
      3. Governing Law ...........................................................................................8

*ARTICLE II* ................................................................................................................ *8*

*CLASSIFICATION OF CLAIMS* ................................................................................. *8*

   **A.** **In General** .................................................................................................... 8

   **B.** **Claims Against the Debtor** ........................................................................... 9
      1. Unimpaired Classes Of Claims (Classes A) ...............................................9
         a. Classes A ...........................................................................................9
      2. Impaired Classes of Claims ........................................................................9
         a. Class B-1, B-2, B-3, and B-4 Claims: ................................................9
         b. Class C Claims: .................................................................................9
         c. Class D: .............................................................................................9

*ARTICLE III* .............................................................................................................. *9*

*TREATMENT OF UNCLASSIFIED CLAIMS* ............................................................... *9*

   **A.** **Administrative Claims** ................................................................................. 9
      1. In General ...................................................................................................9
      2. Statutory Fees ...........................................................................................10
      3. Ordinary Course Liabilities ......................................................................10
      4. Bar Date for Administrative Claims ..........................................................10
         a. General Bar Date Provisions ...........................................................10
         b. Professional Compensation .............................................................11

   **B.** **Priority Tax Claims** .................................................................................... 11

*ARTICLE IV* ............................................................................................................. *12*

*TREATMENT OF CLASSES OF CLAIMS* .................................................................. *12*

   **A.** **Treatment of Unimpaired Class of Claims** ................................................ 12
        1. Class A: ...............................................................................................12

   **B.** **Treatment of Impaired Classes of Claims** ................................................. 12
      1. Classes B-1, B-2, B-3, and B-4: ...............................................................12
      2. CLASS C ..................................................................................................14
      3. CLASS D: .................................................................................................14

   **C.** **No Accrual of Postpetition Interest** ........................................................... 15

*ARTICLE V* ............................................................................................................... *15*

*ACCEPTANCE OR REJECTION OF THIS PLAN; EFFECT OF* ........................................ *15*

i

*REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS* ................................ 15

    **A.**   **Impaired Classes of Claims Entitled to Vote** ................................ 15

    **B.**   **Acceptance by an Impaired Class of Claims or Interests** ................................ 15

    **C.**   **Presumed Acceptances by Unimpaired Classes** ................................ 15

*ARTICLE VI* ................................ 16

*MEANS OF EXECUTION* ................................ 16

    **A.**   **Introduction** ................................ 16

    **B.**   **Payments To Class C** ................................ 16

        3.   Interest Holders' Treatment ................................ 16

    **C.**   **Preservation of Rights of Action** ................................ 16

    **D.**   **Releases by Recipients of Distributions** ................................ 17

    **E.**   **Release of Liens** ................................ 17

*ARTICLE VII* ................................ 18

*TREATMENT OF DISPUTED CLAIMS* ................................ 18

*ARTICLE VIII* ................................ 18

*EXECUTORY CONTRACTS AND UNEXPIRED LEASES* ................................ 18

*ARTICLE IX* ................................ 19

*CONDITIONS PRECEDENT TO CONFIRMATION AND* ................................ 19

*CONSUMMATION OF THIS PLAN* ................................ 19

    **A.**   **Conditions to Confirmation** ................................ 19

    **B.**   **Conditions to Effective Date** ................................ 19

*ARTICLE X* ................................ 19

*CRAM-DOWN* ................................ 19

*ARTICLE XI* ................................ 20

*TITLE TO THE DEBTOR'S PROPERTY* ................................ 20

*ARTICLE XII* ................................ 20

*RETENTION OF CERTAIN CAUSES OF ACTION* ................................ 20

*ARTICLE XIII* ................................ 20

*DISCHARGE AND INJUNCTION* ................................ 20

    **A.**   **Discharge** ................................ 20

    **B.**   **Injunction** ................................ 21

*ARTICLE XIV* ................................ 22

*PROVISIONS GOVERNING DISTRIBUTIONS* ................................ 22

    **A.**   **General Distribution Provisions** ................................ 22

ii

       1.    Method of Distributions to Holders of Claims..............................................................22

       2.    Distributions to be Made on the Effective Date........................................................22

       3.    Timing and Calculation of Amounts to be Distributed .............................................23

            a.    Establishment of Distribution Dates......................................................................23

            b.    Timing of Payment of Distributions of Less Than $10..........................................23

**B.**    **Delivery of Distributions and Undeliverable or Unclaimed Distributions.............................23**

       1.    Delivery of Distributions in General.........................................................................23

       2.    Undeliverable Distributions .......................................................................................24

**C.**    **Means of Cash Payments.....................................................................................................24**

**D.**    **Compliance with Tax Requirements ...................................................................................24**

**E.**    **Setoffs .....................................................................................................................................25**

***ARTICLE XV*** **.....................................................................................................................................25**

***MISCELLANEOUS PROVISIONS*** **...............................................................................................25**

    A.    Retention of Jurisdiction..............................................................................................25

    B.    Modification of this Plan .............................................................................................25

    C.    Revocation of this Plan ...............................................................................................26

    D.    Exculpation and Limitation of Liability......................................................................26

    E.    Severability of Plan Provisions....................................................................................26

    F.    Determination of Tax Liability ....................................................................................27

    G.    Professionals Employed by Order of the Court. ..........................................................27

86533

## INTRODUCTION

Navarre Industries, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), hereby proposes the following plan of reorganization, pursuant to section 1121(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330.  **All holders of claims against the Debtor are encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan.  The Debtor reserves the right to alter, amend, or modify this Plan pursuant to the terms of this Plan and the Bankruptcy Code.**

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### A.     Defined Terms

For purposes of this Plan, the following definitions shall apply, unless the context otherwise requires:

1.1.    **"Administrative Claim"** shall mean a Claim for costs and expenses of administration allowed under section 503(b) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as payments for leased equipment and premises); (b) compensation for legal, financial, and business advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Bankruptcy Code, 28 U.S.C. §§ 1911-1930.

1.2.    **"Allowed Claim" or "Allowed Interest"** shall mean a claim or interest:  (a) proof of which has been filed with the Court on or before the claim bar dated fixed by the Court;

1

or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to amount; or (c) which is an administrative claim arising in the ordinary course of the Debtor's business and financial affairs, to which no objection is filed.  However, no Claim or Interest shall be included in this definition if it is a contingent claim or if an objection to the allowance thereof has been, or may be, filed within any applicable period of time fixed by the Bankruptcy Code, Bankruptcy Rules, or by order of the Court, unless and until such objection has been determined by a Final Order of the Court.

1.3. **"Allowed Priority Claim"** shall mean a Priority Claim to the extent that it is, or has become, an Allowed Claim, which in any event, shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

1.4. **"Allowed Priority Tax Claim"** shall mean a Priority Tax Claim to the extent that it is, or has become, an Allowed Claim, which in any event, shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

1.5. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien on property in which the Debtor have an interest, or which is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with section 506(a) of the Bankruptcy Code) of such creditor's interest in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

1.6. **"Avoidance Actions"** means any claim or cause of action of the Debtor or the Estate, including claims and causes of action pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code.

86533

1.7. **"Bankruptcy Code"** shall mean the Bankruptcy Code of 1978, effective October 1, 1979, as amended, as set forth in title 11 of the United States Code.

1.8. **"Bankruptcy Rules"** shall mean, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Court, as now in effect or hereafter amended.

1.9. **"Bar Date**" shall mean the applicable bar date by which a Proof of Claim must be Filed, as established by the Court, including the Bar Date Order, and the Confirmation Order.

1.10. **"Bar Date Order"** shall mean the Order Granting the Debtor's Motion Establishing Bar Date for Filing Proofs of Claim and Approving Form and Notice Thereof, entered by the Court on July 11, 2012.

1.11. **"Chapter 11 Case"** shall mean the chapter 11 case filed by the Debtor and pending in the Court under Case No. 12-61113.

1.12. **"Claim"** shall mean any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

1.13. **"Class"** shall mean a class of Claims, as described in Article II.

1.14. **"Confirmation Order"** shall mean the order of the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.15. **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, in Canton, or such other court as may have jurisdiction over the Debtor with respect to the Chapter 11 Case.

86533

1.16. **"Creditor"** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date.

1.17. **"Debtor" or "Debtor-in-Possession"** shall mean Navarre Industries, Inc.

1.18. **"Disputed Claim"** shall mean:

    a.    if no Proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim that has been listed on the Debtor's schedule of liabilities as not disputed, contingent, or unliquidated, but as to which the Debtor, prior to the Effective Date, or any other party in interest, has Filed an objection or (ii) a Claim that has been listed on the Debtor's schedule of liabilities as disputed, contingent, or unliquidated; or

    b.    if a Proof of Claim or request for payment of an Administrative Claim has been Filed by the applicable Bar Date, or has otherwise been deemed timely Filed under applicable law: (i) a Claim that is listed on the Debtor's schedule of liabilities as not disputed, contingent, or unliquidated, but as to which the nature or amount of the Claim as asserted in the Proof of Claim varies from the nature and amount of such Claim as it is listed on the schedule of liabilities; *provided however*, that such Claim shall not be a Disputed Claim under such circumstances if the Debtor determines that the allowable nature and amount of the Claim is as asserted in the Proof of Claim; or (ii) a Claim as to which an objection has been Filed by the Debtor, prior to the Effective Date, or any other party in interest, and such objection has not been withdrawn or denied by a Final Order.

1.19. **"Distributable Cash"** shall mean cash available for distribution to non-priority unsecured creditors in the approximate amount shown on Exhibit 3 to the Disclosure Statement accompanying this Plan available through the reorganized Debtor's operations, less amounts paid to holders of Allowed Administrative Claims and Allowed Priority Claims.

1.20. **"Effective Date"** shall mean the date selected by the Debtor before which: (a) the order confirming this Plan becomes final and non-appealable, and no appeal of which is pending. In the event an appeal is pending, the Debtor may, in its sole discretion, select an Effective Date notwithstanding such appeal.

4

86533

1.21.  **"File," "Filed," or "Filing"** shall mean file, filed, or filing with the Court in the Chapter 11 Case.

1.22.  **"Final Order"** shall mean a judgment or order as to which:  (a) any appeal that has been taken or review that has been sought has been finally determined or dismissed; or (b) the time for filing a request for review, notice of appeal, or a petition for certiorari has expired and no request for review, notice of appeal, or petition for certiorari has been timely filed.

1.23.  **"General Unsecured Claim"** shall mean any Claim not secured by a lien or security interest in the Debtor's property and not entitled to priority under section 507 of the Bankruptcy Code.

1.24.  **"Interest"** shall mean the legal, equitable, contractual and all other rights of any person with respect to membership units, common stock, preferred stock or other capital stock or equity securities of or ownership interests in the Debtor, or any warrants, options, or other granted or otherwise agreed to by the Debtor providing for their issuance of any such capital stock, equity securities or ownership interests.

1.25.  **"Interest holder"** shall mean the holder of an interest.

1.26.  **"IRS"** shall mean the Internal Revenue Service of the United States of America.

1.27.  **"Petition Date"** shall mean April 19, 2012, the date the Chapter 11 Case was commenced.

1.28.  **"Plan"** shall mean this Chapter 11 Plan of Reorganization and any applicable modifications or amendments hereto that may be subsequently filed with the Court.

1.29.  **"Priority Claim"** shall mean any Claim entitled to priority in payment under sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code.

5

86533

1.30. **"Priority Tax Claim"** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.31. **"Professional"** shall mean any professional retained in the Debtor's Chapter 11 Case pursuant to section 327 or 1103 of the Bankruptcy Code.

1.32. **"Pro-Rata"** shall mean proportionately so that: (a) the ratio of the amount of a particular Allowed Claim to the total amount of Allowed Claims of the class in which the particular Allowed Claim is included is the same as (b) the ratio of the amount of consideration distributed on account of such particular Allowed Claim to the consideration distributed on account of all Allowed Claims of the class in which the particular Allowed Claim is included.

1.33. **"Proof of Claim"** shall mean the document required to be Filed with the Court or its designated agent by a person asserting a Claim against the Debtor pursuant to chapter 5 of the Bankruptcy Code.

1.34. **"Schedules"** shall mean Schedules of Assets and Liabilities and Statement of Financial Affairs, as they may be amended, filed by the Debtor with the Court listing the Debtor's liabilities and assets.

1.35. **"Secured Claim"** shall mean a claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) and, if applicable, section 1129(b) of the Bankruptcy Code.

1.36. **"Stock"** shall mean the duly authorized, validly issued, and outstanding shares of common stock of the Debtor.

6

86533

1.37.   **"Voting Deadline"** shall mean the deadline for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, as specified in the Disclosure Statement.

Terms defined in the Bankruptcy Code and not otherwise specifically defined herein shall have the meanings attributed to them in the Bankruptcy Code.

## B.   Rules Of Interpretation And Computation Of Time

### 1.   Rules of Interpretation

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) all references in this Plan to "Sections", "Articles", and "Exhibits" are references to Sections, Articles, and Exhibits of or to this Plan; (e) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) subject to the provisions of any contract, articles of incorporation, code of regulations, similar constituent documents, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with Ohio law except to the

7

86533

extent that federal law, including the Bankruptcy Code and Bankruptcy Rules applies; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

**2.  Computation of Time**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**3.  Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of a contract, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and constructed and enforced in accordance with, the laws of the State of Ohio, without giving effect to the principles or conflicts of law thereof.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS**

**A.  In General**

All Claims, except Administrative Claims and Priority Tax Claims, are placed in the Classes described below.  In accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below in Article III, have not been classified.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

8

86533

B.    **Claims Against the Debtor**

1.    **Unimpaired Classes Of Claims (Classes A)**

a.    *Classes A*

All Allowed Priority Claims under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.   The Debtor estimates Allowed Priority Claims in the following amounts based on the Proofs of Claim filed in the Chapter 11 Case: Class A.   Total estimated Class A, claims are $0.00

2.    **Impaired Classes of Claims**

a.    *Class B-1, B-2, B-3, B-4, and B-5 Claims:*

Allowed Secured Claims of Classes B-1, B-2, B-3, B-4, and B-5 (PNC Bank ("PNC"), Huntington National Bank ("HNB"), the Internal Revenue Service ("IRS"), Aerolite Extrusion Co. ("Aerolite") and the Stark County Treasurer ("Treasurer"), respectively). The amount of Classes B-1 through B-5 Allowed Secured Claims shall be as stated on Schedule II.B.2.

b.    *Class C Claims:*

All Allowed Claims that are General Unsecured Claims.   Class C includes Claims of trade creditors and unsecured portions of secured Claims against the Debtor.

c.    *Class D:*

Interests that are Allowed Interests:  Paul Miller.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

A.    **Administrative Claims**

1.    **In General**

Except as specified in Articles VI and XIV of this Plan, and subject to the Confirmation Order, and unless otherwise agreed to by the holder of an Allowed Administrative

9

86533

Claim and the Debtor, each holder of an Allowed Administrative Claim will receive from the Debtor cash equal to the amount of such Allowed Administrative Claim on the Effective Date or, if the Administrative Claim is not allowed as of the Effective Date, 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, in full satisfaction of its Claim.

2. **Statutory Fees**

On the Effective Date, the Debtor will pay Administrative Claims for fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation hearing, in cash equal to the amount of such Administrative Claims. In addition, pursuant to section 1930(a)(6) of title 28 of the United States Code, the Debtor will pay quarterly fees arising under such section until the chapter 11 case is closed, converted, or dismissed.

3. **Ordinary Course Liabilities**

Administrative Claims based on liabilities incurred by the Debtor in the ordinary course of its business including real estate taxes and insurance on the Debtor's current business premises will be paid by the Debtor, following the Effective Date, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, provided that any such Administrative Claim is supported by the Debtor's books and records. If an Administrative Claim is not so supported, then the holder of such Administrative Claim must comply with the provisions of Article III. A. 4 of this Plan.

4. **Bar Date for Administrative Claims**

a. *General Bar Date Provisions*

Holders of Administrative Claims are required to File and serve a request for payment in accordance with the Confirmation Order. If any such Claim is not Filed and served by the Claim Bar Date, it shall be forever barred and will be deemed discharged as of the

10

Effective Date. Objections to such requests must be Filed and served on the Debtor, and the requesting party, by 20 days after the Filing of the applicable request for payment of the Administrative Claim.

### b. *Professional Compensation*

Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered before the Confirmation Date (including compensation requested pursuant to section 503(b)(3) and (4) of the Bankruptcy Code by any Professional or other entity for making a substantial contribution in the Debtor's Chapter 11 Case) must File and serve on the Debtor, and such other entities that are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, an application for final allowance of compensation and reimbursement of expenses no later than 45 days after the Confirmation Date. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtor, and the requesting party by the earlier of (a) 65 days after the Confirmation Date and (b) 20 days after the Filing of the applicable request for payment of compensation and reimbursement of expenses.

## B. Priority Tax Claims

Unless such holder, or its successors or assigns, and the Debtor agrees to other terms, or a Final Order of the Court provides for other terms, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code subject to Article VI of this Plan, the Debtor will pay, in full, in cash Allowed Priority Tax Claims no later than sixty (60) months following the Petition Date. The Debtor will make monthly payments on all Priority Tax Claims as set forth on Schedule III.B attached hereto.

11

86533

## ARTICLE IV
## TREATMENT OF CLASSES OF CLAIMS

**A.** **Treatment of Unimpaired Class of Claims**

    **1.** **Class A:**

Each holder of a Class A Allowed Claim shall be paid in full, either (i) on the Effective Date; (ii) within thirty days of the allowance of such Claim by a Final Order; or (iii) over five (5) years from the Petition Date in quarterly payments whichever is later, or under such other terms as may be agreed upon by the holder of such Allowed Claim and the Debtor.

**B.** **Treatment of Impaired Classes of Claims**

    **1.** **Classes B-1, B-2, B-3, B-4, and B-5:**

In full satisfaction of their Allowed Claims, the holders of Allowed Claims in Classes B-1, B-2, B-3, B-4, and B-5 shall receive the following:

    a.  The holder of Allowed Claims in Class B-1 (PNC) shall receive the following in full satisfaction of its Allowed Secured Claims:

        i.  The Debtor will pay: (w) $799,921.06, or the amount owed on the Effective Date, whichever is less, to PNC on the promissory note dated April 19, 2004, (Acct. No. 1266) as it may have been amended from time to time ("Note 1"); (x) $178,021.10, or the amount owed on the Effective Date, whichever is less, to PNC on the promissory note dated April 19, 2004, (Acct. No. 1274) as it may have been amended from time to time ("Note 2"); (y) $92,497.99, or the amount owed on the Effective Date, whichever is less, to PNC on the promissory note dated October 5, 2005, (Acct. No. 1259) as it may have been amended from time to time ("Note 3"); and (z) $30,567.25, or the amount owed on the Effective Date,

12

whichever is less, to PNC on the promissory note dated January 25, 2005, (Acct. No. 0089) as it may have been amended from time to time ("Note 4"), together with simple interest at 5.25% per annum, amortized over a term of 180 months with any unpaid balance coming due with 60th month after the Effective Date, with no prepayment penalty and upon request, with the Debtor executing loan documents in a form and substance acceptable to PNC. The payment terms of the restructured obligations shall be as follows: the Debtor will make equal monthly payments not to exceed $5,738.00 on Note 1, $1,326.00 on Note 2, $651.00 on Note 3, and $232.00 on Note 4. PNC shall retain its security interest in collateral with the same validity and priority as on the Petition Date (the "PNC Collateral").

    ii.  The balance, if any, of PNC's Claim shall be paid as a Class C Claim.

b.    The holder of an Allowed Claim in Class B-2 (HNB) shall receive the following in full satisfaction of its Allowed Secured Claims:

    i.  The Debtor will pay $0 to HNB on the promissory note dated May 18, 2010, as an Allowed Secured Claim. HNB's security interest evidenced by UCC filing OH00143467383 shall be stripped and discharged as of the Effective Date.

    ii.  The balance of HNB's Claim shall be paid as a Class C Claim.

c.    The holder of an Allowed Claim in Class B-3 (IRS) shall receive the following in full satisfaction of its Allowed Secured Claims:

86533

       i.   The Debtor will pay $264,582.00, or the amount owed on the Effective Date, whichever is less, to the IRS as an Allowed Priority Tax Claim.

d.      The holder of an Allowed Claim in Class B-4 (Aerolite) shall receive the following in full satisfaction of its Allowed Secured Claims:

       i.   The Debtor will pay $0 to Aerolite on the promissory note dated April 30, 2008, as an Allowed Secured Claim. Aerolite's mortgage filed as document no. 20087030030487 in the Stark County Recorder's office shall be stripped and discharged as of the Effective Date.

      ii.   The balance of Aerolite's Claim shall be paid as a Class C Claim.

e.      The holder of an Allowed Claim in Class B-5 (Treasurer) shall receive the following in full satisfaction of its Allowed Secured Claims:

       i.   The Debtor will pay $41,300 to the Treasurer as an Allowed Secured Claim over sixty (60) months commencing the first month after the Effective Date, together with interest at the statutory rate.

**2.    CLASS C**

Each holder of a Class C Allowed Claim shall receive in full satisfaction of its Allowed Class C Claim a Pro Rata portion of Distributable Cash from the Debtor. The payment by the Debtor to holders of Allowed Class C Claims shall be made in annual payments for up to five (5) years, beginning in the first year following the Effective Date, but in no event, commencing no later than March 31, 2014.

**3.    CLASS D:**

The holders of Allowed Interests in Class D shall retain their Interest in the Debtor.

86533

C.    **No Accrual of Postpetition Interest**

Except as otherwise provided in this Plan, no holder of an Allowed Claim shall be entitled to the accrual of postpetition interest or the payment by the Debtor of postpetition interest on account of such Claim for any purpose.

**ARTICLE V**
**ACCEPTANCE OR REJECTION OF THIS PLAN; EFFECT OF**
**REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS**

A.    **Impaired Classes of Claims Entitled to Vote**

Except as otherwise provided in this Plan, holders of Allowed Claims in each impaired Class of Claims are entitled to vote as a class to accept or reject this Plan.

B.    **Acceptance by an Impaired Class of Claims or Interests**

Pursuant to section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted this Plan if the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class actually voting on this Plan have voted to accept this Plan.

Pursuant to section 1126(d) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Interests has accepted this Plan if the holders of at least two-thirds (2/3) of the Allowed Interests of such Class actually voting on this Plan have voted to accept this Plan

C.    **Presumed Acceptances by Unimpaired Classes**

Class A is unimpaired by this Plan.  Under section 1126(f) of the Bankruptcy Code, the holders of such Claims are conclusively presumed to have accepted this Plan, and the votes of such holders shall not be solicited.

86533

# ARTICLE VI
## MEANS OF EXECUTION

**A.    Introduction**

Though Restructuring Transactions discussed below, the Debtor will restructure its finances by continued operations and modifying certain secured obligations.

**B.    Payments To Class C**

The holders of Allowed Claims in Class C shall be paid by the Debtor in annual payments from the Debtor's disposable income for a period of not more than five (5) years, with such five (5) year period commencing on the Effective Date, but in no event, commencing later than March 31, 2014.  Payments of Distributable Cash shall be each holder's Pro-Rata share of Distributable Cash from (i) the Debtor's disposable income; and (ii) any funds recovered by the Debtor, less any costs associated with recovering such funds, with respect to those claims, demands, and causes of action retained pursuant to Article IX of this Plan from the preceding calendar year, up to a maximum amount of $84,586.00.

**3.    Interest Holders' Treatment**

Holders of Allowed Interests shall retain their Interests in the Debtor.

**C.    Preservation of Rights of Action**

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, pursuant to section 1123(b) of the Bankruptcy Code, the Debtor, and its successors and assigns, retains and may enforce any claims, rights, and causes of action that the Debtor or the Estate may hold against any entity, including, but not limited to, any Avoidance Actions.  The Debtor in its capacity as reorganized Debtor shall be authorized and empowered to prosecute and/or settle any such claims, rights, or causes of action.

16

86533

**D. Releases by Recipients of Distributions**

Except as otherwise provided in this Plan, each entity receiving a distribution pursuant to this Plan on account of its Allowed Claim will be deemed to forever release, waive, and discharge all known and unknown Claims of any nature that such entity has, had, or may have, prior to Effective Date against the Debtor to the fullest extent permitted under applicable law. The Confirmation Order will enjoin the prosecution, whether directly, derivatively, or otherwise, of any claim, debt, and right or cause of action released or to be released pursuant to this Plan.

**E. Release of Liens**

Except as otherwise provided in this Plan, or in any contract, instrument, release, or other agreement or document created in connection with this Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estate, or against property that is collateral for any obligation of the Debtor, will be fully released and discharged, and all of the rights, titles, and interests of any holder of such mortgages, deeds of trust, liens or other security interests will revert to the Debtor and its successors and assigns.

**F. Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

The Debtor and any entity formed under this Plan will be authorized to: (a) execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents contemplated by or entered into in connection with this Plan; and (b) take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtor or any entity formed under this Plan will be authorized to certify or attest to any of the foregoing actions. Pursuant to section 1146(c) of the Bankruptcy Code: (a) the creation or transfer of any mortgage, deed of trust or other security interest; (b) the making or assignment of any lease or sublease; (c) the making or delivery of any deed or other instrument, in furtherance

17

86533

of or in connection with this Plan, including any agreements of consolidation, deeds, bills of sale, assignments, assumptions, or delegations of any asset, property, right, liability, duty or obligation; or (d) the making of any instruments of transfer executed in connection with any of the foregoing will not be subject to any stamp tax, real estate transfer tax, or similar tax.

## ARTICLE VII
## TREATMENT OF DISPUTED CLAIMS

No payment or distributions will be made on a Claim if any portion of the Claim is disputed until all of the objections to the Claim, or any portion of the Claim, have been determined by a Final Order of the Court.  Any payment or distribution that otherwise would have been made on account of such Claim had it been allowed will be held in reserve by the Debtor (in the "Unpaid Claims Reserve") pending a determination of the allowability of the Claim.

In the event that a Disputed Claim is resolved by the allowance of such Claim in whole or in part, the Debtor will make the appropriate distribution to the holder of the Claim from the Unpaid Claims Reserve in accordance with the provisions of this Plan.  When all Disputed Claims have been allowed or disallowed, all cash then remaining in the Unpaid Claims Reserve will be distributed to holders of Allowed Class C Claims.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor hereby assumes no agreements with and rejects all executory contracts and unexpired leases to which the Debtor are a party that have not been assumed or rejected by an Order of the Court prior to the Effective Date with the specific exception of the tolling agreement with Therma Tru which is assumed.  Any and all claims for damages arising from the rejection

86533

of executory contracts or unexpired leases shall be treated as non-priority General Unsecured

Claims and included in Class C.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THIS PLAN

**A.      Conditions to Confirmation**

The Court will not enter the Confirmation Order unless, and until, each of the following

conditions has been satisfied or waived (if waivable):

1.      The Court will have entered an order approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code;

2.      The Confirmation Order will be reasonably acceptable to the Debtor, in form and substance.

**B.      Conditions to Effective Date**

This Plan shall not be consummated, and the Effective Date shall not occur, unless the

following conditions are satisfied or waived (if waivable):

1.      The Court will have entered the Confirmation Order;

2.      The Court will have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Debtor to take all actions necessary or appropriate to implement this Plan;

## ARTICLE X
## CRAM-DOWN

The Debtor hereby requests the Court to find that the provisions of this Plan provide fair

and equitable treatment to any class of Claims that is impaired under this Plan and that has not

accepted this Plan, and to confirm this Plan notwithstanding the requirements of section

1129(a)(8) of the Bankruptcy Code as applied to such class.

19

86533

## ARTICLE XI
## TITLE TO THE DEBTOR'S PROPERTY

Upon confirmation, all property of the Debtor's estate shall vest in the Debtor and its transferees free and clear of all liens, claims, or encumbrances except as specifically set forth in this Plan.

## ARTICLE XII
## RETENTION OF CERTAIN CAUSES OF ACTION

This Plan provides that the Debtor shall retain any claims, demands, and causes of action of the kind specified in sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code accruing prior to the Effective Date. The Debtor may, upon notice to the Office of the United States Trustee, compromise and settle any such retained claims, demands, and causes of action. All consideration received by the Debtor as a result of a settlement of any such retained claims, or of enforcement of any judgment obtained on any such retained claims, less any costs associated with receiving or recovering such consideration, shall be utilized by the Debtor to fund this Plan, and shall be distributed in accordance with its terms.

## ARTICLE XIII
## DISCHARGE AND INJUNCTION

**A.      Discharge**

Except as provided in this Plan or the Confirmation Order, the rights afforded under this Plan and the treatment of Claims under this Plan will be in exchange for and in complete satisfaction, discharge, and release of all Claims, including any interest accrued on Claims from the Petition Date. Except as provided in this Plan or the Confirmation Order, Confirmation will (a) discharge the Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is Filed or deemed Filed pursuant to

20

86533

section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of a Claim based on such debt has accepted this Plan; and (b) terminate all interests and other rights of creditors, if any, in property of the Debtor.

As of the Confirmation Date, except as provided in this Plan or Confirmation Order, all entities will be precluded from asserting against the Debtor, the Estate, and any entity to be formed under this Plan, any other or further Claims, debts, rights, causes or action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order will be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor and termination of all such Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor, and/or any entity to be formed under this Plan, at any time, to the extent that such judgment relates to a discharged Claim.

**B.        Injunction**

Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim, or other debt or liability that is discharged pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts, or liabilities: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the property of the Debtor or any entity to be formed under this Plan and property transferred to any such entity; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, or the property of the Debtor or any entity to be

21

formed under this Plan and property transferred to any such entity; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, or the property of the Debtor or any entity to be formed under this Plan and property transferred to any such entity; (d) asserting a right of subordination of any kind against any debt, liability, or obligation due to the Debtor, or the Estate or the property of the Debtor or any entity to be formed under this Plan and property transferred to any such entity; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

## ARTICLE XIV
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    General Distribution Provisions

#### 1.    Method of Distributions to Holders of Claims

The Debtor will make all distributions required under this Plan and will serve without bond.

#### 2.    Distributions to be Made on the Effective Date

Distributions to be made on or as soon as practicable after the Effective Date to holders of Claims that are allowed as of the Effective Date will be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (a) March 31, 2014, or such later date as the Debtor first has funds sufficient to make such payments while retaining appropriate reserves for payment of: (i) all costs, expenses, and obligations of administering this Plan and (ii) all other Claims that have the same priority or a higher priority of payment as established herein or (b) such later date when the applicable conditions of this Plan regarding undeliverable distributions are satisfied. Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to this Article.

22

86533

### 3. Timing and Calculation of Amounts to be Distributed

#### a. *Establishment of Distribution Dates*

Distribution Dates shall be established by the Debtor in its discretion. The Debtor shall establish Distribution Dates with a goal of making distributions to creditors as soon as practicable in annual payments commencing after the first calendar year after the Effective Date, but in no event, commencing no later than March 31, 2014. Before making any distribution, the Debtor will establish an appropriate reserve for the payment of costs. In making any distribution, the Debtor will account for and reserve for distributions that are being made and/or will need to be made to other Classes and to other members of the same Class.

#### b. *Timing of Payment of Distributions of Less Than $10*

To the extent that any distribution to be made to an Allowed Claim holder (which Allowed Claim holder has not already received a distribution hereunder) on any Distribution Date is less than $10, the Debtor may withhold such distribution until a later Distribution Date on which the cumulative amount to be distributed to such Allowed Claim holder is equal to or greater than $10, if ever.

### B. Delivery of Distributions and Undeliverable or Unclaimed Distributions

#### 1. Delivery of Distributions in General

Distributions to holders of Allowed Claims will be made by the Debtor: (a) at the addresses set forth on the respective proofs of Claim Filed by holders of such Claims; (b) at the addresses set forth in any written certification of address change delivered to the Debtor after the date of Filing of any related proof of Claim; or (c) at the addresses reflected in the Debtor's schedules of liabilities if no proof of Claim has been Filed and the Debtor has not received a written notice of a change of address.

86533

## 2. Undeliverable Distributions

If any distribution to an Allowed Claim holder is returned to the Debtor as undeliverable, no further distributions will be made to such holder unless and until the Debtor is notified by written certification of such holder's then-current address. Nothing contained in this Plan will require the Debtor to attempt to locate any holder of an Allowed Claim. Undeliverable distributions will remain in the possession of the Debtor pursuant to this Section XIV.B.2 until such time as a distribution becomes deliverable. On each Distribution Date, the Debtor will make all distributions that became deliverable to holders of Allowed Claims since the previous Distribution Date. Any holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable distribution to be made by the Debtor within one year after the last date on which a distribution was first deliverable to such Allowed Claim holder will be forever barred from asserting any such Claim. In such cases, any cash held for distribution on account of such Claims will be redistributed to holders of Allowed Claims in the priority order set forth in this Plan.

## C. Means of Cash Payments

Cash payments made pursuant to this Plan will be in U.S. dollars by checks drawn on a domestic bank selected by the Debtor or by wire transfer from a domestic bank, at the option of the Debtor.

## D. Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Debtor and all entities formed under this Plan will comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to this Plan will be subject to such withholding and reporting requirements, and the Debtor and all entities formed under this Plan will be authorized to pay excise or other employer-related taxes. The Debtor and all entities

24

86533

formed under this Plan will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

Notwithstanding any other provision of this Plan, each entity receiving a distribution of cash pursuant to this Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

E.      Setoffs

Pursuant to section 553 of the Bankruptcy Code, or any applicable nonbankruptcy law, the Debtor may set off against any claims, debts, rights and causes of action of any nature that Debtor or any entity to be formed under this Plan may hold against the holder of an Allowed Claim, and the distributions to be made pursuant to this Plan on an Allowed Claim (before any distribution is made with regard to such Claim).   Neither the failure to effect such a setoff, nor the allowance of any Claim hereunder, will constitute a waiver or release of any claims, debts, rights and causes of action against such holder.

**ARTICLE XV**
**MISCELLANEOUS PROVISIONS**

A.      **Retention of Jurisdiction**

The Court retains jurisdiction over the Debtor's Plan and the parties to the Debtor's Plan to interpret and enforce all the provisions of the Debtor's Plan.

B.      **Modification of this Plan**

Subject to the restriction on modifications set forth in section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify this Plan before its substantial consummation.

25

86533

### C.    Revocation of this Plan

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if Confirmation does not occur, then this Plan will be null and void in all respects, and nothing contained in this Plan will: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor's real or personal property; or (b) prejudice in any manner the rights of the Debtor.

### D.    Exculpation and Limitation of Liability

From and after the Effective Date, the Debtor, Reorganized Debtor, and its members and Representatives, acting in such capacity, shall neither incur any liability to any Person for any act taken or omitted in connection with the Debtor's restructuring, including the formulation, preparation, dissemination, implementation, confirmation or approving of the Chapter 11 Case, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that this section shall not apply to the obligations arising under the Plan an provided further, however, that the foregoing provisions shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent that act or omission is determined in a Final Order to have constituted fraud, bad faith, gross negligence or willful misconduct.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### E.    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such

86533

term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, and so long as any such alteration or interpretation is not a material change to the Plan as determined by the Debtor, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. If any such alternation or interpretation results in a material change to the Plan as determined by the Debtor, then the Debtor reserves the right to withdraw the Plan. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### F. Determination of Tax Liability

Pursuant to section 505(b) of the Bankruptcy Code, the Debtor intend to request a determination of any unpaid liability for any federal income tax incurred during the administration of the Chapter 11 Case by submitting a tax return for such tax, together with payment of the tax, if any, shown thereon, and a request for such a determination to the IRS. The Debtor reserves the right, to the extent they deems it necessary and appropriate, to request similar determinations of any unpaid liability for any other taxes (including, without limitation, any state or local taxes) incurred during the administration of their Chapter 11 Case by submitting a tax return for such other tax, together with payment of the tax, if any, shown thereon, and a request for such a determination to the appropriate governmental unit charged with responsibility for collection or determination of such tax.

### G. Professionals Employed by Order of the Court.

After Confirmation of this Plan, all applications for compensation and reimbursement of expenses, and notice of the hearing thereon, shall be served upon counsel for the Debtor, the

86533

Office of the United States Trustee, and any party who files with the Court a new request for notice. After such notice and hearing, the Debtor will be authorized to distribute and pay to such professionals such amounts as approved by the Court.

November 15, 2012

NAVARRE INDUSTRIES, INC.

/s/Paul Miller
By: Paul Miller
Its: President


/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
Courtyard Centre Suite 307
116 Cleveland Avenue NW
Canton, Ohio 44702
Telephone: 330-588-9700
Facsimile: 330-588-9713
E-mail: ajdlaw@sbcglobal.net

COUNSEL FOR THE DEBTOR
AND DEBTOR IN POSSESSION

86533

| PNC BANK: CLASS B-1 | | | |
| --- | --- | --- | --- |
| **Approximate Claim Amount** | **Property** | **Property Value** | **Value of Lien** |
| **$799,921.06**<br>**$178,021.10**<br>**$92,497.99**<br>**$30,5657.25**<br>**Total $1,101,007.40** | Tangible Real and Personal Property | $780,000 | $780,000 |

| HUNTINGTON NATIONAL BANK: CLASS B-2 | | | |
| --- | --- | --- | --- |
| **Approximate Claim Amount** | **Property** | **Property Value** | **Value of Lien** |
| **$206,591.29** | Tangible Personal Property | $780,000 | $0 |

| INTERNAL REVENUE SERVICE: CLASS B-3 | | | |
| --- | --- | --- | --- |
| **Approximate Claim Amount** | **Property** | **Property Value** | **Value of Lien** |
| **$264,582.37** | Tangible Real and Personal Property | $780,000 | $0 |

| AEROLITE EXTRUSION CO.: CLASS B-4 | | | |
| --- | --- | --- | --- |
| **Approximate Claim Amount** | **Property** | **Property Value** | **Value of Lien** |
| **$378,146.03** | Tangible Real Property | $780,000 | $0 |

| STARK COUNTY TREASURER: CLASS B-5 | | | |
| --- | --- | --- | --- |
| **Approximate Claim Amount** | **Property** | **Property Value** | **Value of Lien** |
| **$41,300** | Tangible Real Property | $780,000 | $41,300 |

86533

### SCHEDULE III.B

| CREDITOR | CLAIM AMOUNT |
|---|---:|
| Ohio Bureau of Workers' Compensation | $1,310.05 |
| Ohio Bureau of Workers' Compensation | $180.17 |
| Ohio Bureau of Workers' Compensation | $4,224.08 |
| State of Ohio Department of Taxation | $16,009.33 |
| Internal Revenue Service | $264,582.37 |
| Stark County Treasurer | $41,300.81 |
| Ohio Bureau of Workers' Compensation | $53,287.15 |
| **TOTAL** | **$380,893.96** |

86533

# EXHIBIT 2

# LIQUIDATION ANALYSIS

**Asset Value:**              **$700,000.00**
**Less:**
**Secured claims**          **($1,654,396.00)**
**Costs of liquidation**      **($70,000.00)**

**Net Value**                 **($0.00)**

# EXHIBIT 3

# <u>FEASIBILITY ANALYSIS</u>

*Unaudited Projected Financial Information*

The following projected financial statements (the "Projections") include the accounts and results of operations of Navarre Industries, Inc.

The Projections are based on estimates and assumptions regarding the future events that affect the projected future financial condition, results of operations and cash flows of the Company. Sensitive estimates and assumptions include, among others, the ability of the Company to retain and obtain new business and profit margins.

The Projections assume the Plan will be implemented in accordance with its terms, and present the anticipated effects of the consummation of the Plan and various other factors on the Debtor's financial condition and results of operations following the Effective Date. *The assumptions and estimates underlying the Projections are inherently uncertain and are subject to a wide variety of significant business, economic and competitive risks and uncertainties that could cause actual results to differ materially from those projected. Accordingly, the Projections are not necessarily indicative of the future financial conditions or results of operations of the Company, which may vary significantly from those set forth in the Projections. Consequently, the unaudited projected Company information contained herein should not be regarded as a representation by the Debtor, its respective advisors, or any other person that the projection condition or results can or will be achieved.*

The Debtor has prepared and is disseminating the Projections solely for the purpose of enabling the Bankruptcy Court to determine the feasibility of the Plan. The Debtor does not intend to repeat this process in the future, or to update or otherwise revise the projections.

The Projections, which present the Company's projected financial conditions as of estimated consummation date and the next five years, and the Company's projected results of operations for each one year period for the next five years based on specific economic assumptions as described under the "Assumptions Used in the Financial Projections"

The accompanying Projections were assembled for your analysis of the proposed restructuring of Navarre Industries, Inc. The aforementioned Projections were not examined or reviewed by independent accountants in accordance with the standards promulgated by the American Institute of Certified Public Accountants (AICPA). This information is limited to the sole use of the parties involved (management, creditors, Trustee) and is not to be provided to other parties.

*Assumptions Used in the Unaudited Financial Projections*

Additional information relating to the principal assumptions used in preparing the Projections is set forth below.

1   *Effective Date; Plan Terms:*  The Effective Date is assumed to be January 1, 2013. The projections assume confirmation in accordance with the terms of the Plan, and that all transactions contemplated by the Plan will be consummated by the Effective Date.

2   *General Economic Conditions:*  Current economic conditions within the Debtor's operations were assumed to continue throughout the Projections Period

3   *Revenues:*  Revenues for years 1 - 2 reflect an assumed increase of 6.5% and years 3 - 5 reflect an assumed increase of 5.5%. The assumed increases in revenues were projected by management and are based upon the assumptions as to the general economic conditions referred to above, certain growth rate assumptions of current and future manufacturing opportunities.

4   *Operating Income:*  Projected operating income is based upon projected revenues, current profit margins, expected market conditions and historical performance. Profit margins are assumed to remain relatively constant throughout the Projection Period.

5   *Interest Expense:*  Projected interest expense consists of interest on priority tax claims and interest on the secured claim by PNC Bank

|  |  |  |  |
|---|---|---|---|
| Priority Tax Claims: | amount | $307,568.00 | |
| | term | 54 months | |
| | interest | 4.50% | |
| | payment | $6,303.47 | |
| PNC Notes | amount | $983,636.59 | (total of four notes) |
| | term | 180 months | |
| | interest | 5.25% | |
| | payment | $7,945.00 | (total of four notes) |

6   *Income Tax Expense:*  The Projections compute federal income tax based on the current rate schedule and assumes it will remain the same throughout the Projection Period.

7   *Balance Sheet Considerations:*  Projected accounts receivable, inventories, accounts payable and accrued & withholding taxes are based on historic levels and relationships of such accounts to revenue, modified, where appropriate, to recognize specific projected balance sheet item changes.

*Capital Expenditures:*
The Projections assume that capital expenditures will be made of the normal maintenance and upkeep of the Company's capital assets. There are no major capital expenditures planned.

*Other Balance Sheet Accounts*
The projections assume that all other balance sheet changes reflect normal amortizations and/or seasonal trends consistent with historical data.

### Navarre Industries, Inc.
### Pro Forma Balance Sheet Reflecting Reorganization Adjustments
### (Unaudited)

| | At Filing | Estimated Pre-Confirmation | Plan Adjustments | Estimated Post-Confirmation | Period 1 | Period 2 | Period 3 | Period 4 | Period 5 |
|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | |
| **Current Assets** | | | | | | | | | |
| Cash | 4,698.05 | 5,000.00 | | 5,000.00 | 12,060.11 | 14,340.82 | 14,350.30 | 15,410.46 | 28,424.91 |
| Accounts Receivable - Trade | 44,824.12 | 42,200.00 | | 42,200.00 | 40,448.64 | 43,049.32 | 45,201.78 | 47,461.87 | 49,834.97 |
| Accounts Receivable - Other | 144,083.00 | 144,083.00 | (144,083.00) | 0.00 | | | | | |
| Inventory | 100,283.26 | 100,283.26 | (80,283.26) | 20,000.00 | 18,385.75 | 19,567.87 | 20,546.27 | 21,573.58 | 22,652.26 |
| Advances | 20,245.00 | 15,732.80 | | 15,732.80 | 15,732.80 | 15,732.80 | 15,732.80 | 15,732.80 | 15,732.80 |
| Prepaid Expenses | 9,843.00 | 9,843.00 | (9,843.00) | 0.00 | | | | | |
| Total Current Assets | 323,976.43 | 317,142.06 | | 82,932.80 | 86,627.30 | 92,690.80 | 95,831.15 | 100,178.71 | 116,644.93 |
| **Property, Plant & Equipment** | | | | | | | | | |
| Building, Land & Improvements | 469,895.72 | 469,895.72 | | 469,895.72 | 469,895.72 | 469,895.72 | 469,895.72 | 469,895.72 | 469,895.72 |
| Equipment | 472,337.92 | 472,337.92 | | 472,337.92 | 472,337.92 | 472,337.92 | 472,337.92 | 472,337.92 | 472,337.92 |
| Furniture & Equipment | 56,289.20 | 57,559.59 | | 57,559.59 | 57,559.59 | 57,559.59 | 59,559.59 | 59,559.59 | 59,559.59 |
| Vehicles | 14,708.26 | 14,708.26 | | 14,708.26 | 14,708.26 | 14,708.26 | 14,708.26 | 14,708.26 | 14,708.26 |
| Less: Accumulated Depreciation | (759,862.79) | (765,010.79) | | (765,010.79) | (775,306.79) | (786,117.59) | (797,595.06) | (809,072.53) | (820,550.00) |
| Total Property, Plant & Equipment | 253,368.31 | 249,490.70 | | 249,490.70 | 239,194.70 | 228,383.90 | 218,906.43 | 207,428.96 | 195,951.49 |
| **Other Assets** | | | | | | | | | |
| Deposits | 7,385.02 | 7,385.02 | | 7,385.02 | 7,385.02 | 7,385.02 | 7,385.02 | 7,385.02 | 7,385.02 |
| Total Other Assets | 7,385.02 | 7,385.02 | | 7,385.02 | 7,385.02 | 7,385.02 | 7,385.02 | 7,385.02 | 7,385.02 |
| Total Assets | 584,729.76 | 574,017.78 | | 339,808.52 | 333,207.02 | 328,459.72 | 322,122.60 | 314,992.69 | 319,981.44 |
| | | | | | | | | | |
| **Liabilities & Stockholders' Equity** | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | |
| Accounts Payable | 203,619.85 | 245,252.88 | (205,752.88) | 39,500.00 | 42,900.08 | 45,658.37 | 47,941.29 | 50,338.35 | 52,855.27 |
| Accrued & Withholding Taxes | 296,358.45 | 320,377.49 | (296,082.39) | 24,295.10 | 25,509.86 | 26,785.35 | 28,124.62 | 29,530.85 | 31,007.39 |
| Unsecured Creditors | | | | | 30,000.00 | 40,000.00 | 50,000.00 | 90,000.00 | |
| Current Portion of Priority Tax Claims | | | 63,072.23 | 63,072.23 | 65,973.39 | 69,009.81 | 72,182.59 | 37,329.98 | |
| Current Portion of PNC Notes | 158,741.39 | 158,741.39 | (114,075.65) | 44,665.74 | 47,066.64 | 49,603.46 | 52,267.33 | 55,099.40 | 58,063.94 |
| Total Current Liabilities | 658,719.69 | 724,371.76 | | 171,533.07 | 211,449.96 | 231,056.98 | 250,515.82 | 262,298.58 | 141,926.59 |
| **Long Term Liabilities** | | | | | | | | | |
| PNC Notes | 884,955.10 | 884,955.10 | 54,015.75 | 938,970.85 | 891,904.21 | 842,300.76 | 790,033.41 | 734,934.01 | 676,870.09 |
| Unsecured Creditors | | | 210,000.00 | 210,000.00 | 180,000.00 | 140,000.00 | 90,000.00 | | |
| Priority Tax Claims | | | 244,495.77 | 244,495.77 | 178,522.38 | 109,512.57 | 37,329.98 | | |
| N/P Huntington Bank | 171,407.68 | 141,407.68 | (141,407.68) | 0.00 | | | | | |
| N/P Aerolite | 296,593.60 | 296,593.60 | (296,593.60) | 0.00 | | | | | |
| Total Long Term Debt | 1,352,956.38 | 1,322,956.38 | | 1,393,466.62 | 1,250,426.59 | 1,091,813.33 | 917,363.39 | 734,934.01 | 676,870.09 |
| Total Liabilities | 2,011,676.07 | 2,047,328.14 | | 1,564,999.69 | 1,461,876.55 | 1,322,870.31 | 1,167,879.21 | 997,232.59 | 818,796.68 |
| **Stockholders' Equity** | | | | | | | | | |
| Common Stock | 500.00 | 500.00 | | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Retained Earnings | (1,427,446.31) | (1,473,810.36) | 248,119.19 | (1,225,691.17) | (1,129,169.53) | (994,910.59) | (846,256.61) | (682,739.90) | (499,315.24) |
| Total Stockholders' Equity | (1,426,946.31) | (1,473,310.36) | | (1,225,191.17) | (1,128,669.53) | (994,410.59) | (845,756.61) | (682,239.90) | (498,815.24) |
| Total Liabilities & Stockholders' Equity | 584,729.76 | 574,017.78 | | 339,808.52 | 333,207.02 | 328,459.72 | 322,122.60 | 314,992.69 | 319,981.44 |

**Reorganized Navarre Industries, Inc.**
**Pro Forma Statement of Income**
**(Unaudited)**

| | Year One | Year Two | Year Three | Year Four | Year Five |
|---|---|---|---|---|---|
| **Sales** | | | | | |
| Sales | 1,401,795.00 | 1,492,911.68 | 1,567,557.26 | 1,645,935.12 | 1,728,231.88 |
| Other Income | 69,064.80 | 72,518.04 | 76,143.94 | 79,951.14 | 83,948.70 |
| **Total Sales** | **1,470,859.80** | **1,565,429.72** | **1,643,701.20** | **1,725,886.26** | **1,812,180.57** |
| **Cost of Sales** | | | | | |
| Purchases | 115,229.33 | 123,463.80 | 129,636.99 | 136,118.83 | 142,924.78 |
| Salaries & Wages | 420,612.00 | 450,560.74 | 473,088.78 | 497,072.41 | 521,926.03 |
| Sub Contract | 47,437.33 | 49,809.20 | 52,299.66 | 57,607.73 | 60,488.12 |
| Payroll Taxes | 58,885.68 | 63,078.50 | 66,232.43 | 69,590.14 | 73,069.64 |
| Supplies | 128,426.67 | 134,848.00 | 144,372.02 | 152,249.00 | 159,861.45 |
| Total Cost of Sales | 770,591.01 | 821,760.24 | 865,629.88 | 912,638.11 | 958,270.01 |
| **Gross Profit** | **700,268.79** | **743,669.47** | **778,071.32** | **813,248.15** | **853,910.56** |
| **Operating Expenses** | | | | | |
| Advertising & Promotion | 600.00 | 630.00 | 661.50 | 694.58 | 729.30 |
| Auto & Truck | 21,360.00 | 22,428.00 | 23,549.40 | 24,726.87 | 25,963.21 |
| Bank Charges | 600.00 | 630.00 | 661.50 | 694.58 | 729.30 |
| Depreciation | 10,296.00 | 10,810.80 | 11,477.47 | 11,477.47 | 11,477.47 |
| Dues & Subscriptions | 600.00 | 630.00 | 661.50 | 694.58 | 729.30 |
| Employee Benefits | 50,688.12 | 55,756.93 | 61,332.63 | 67,465.89 | 74,212.48 |
| Insurance | 9,500.00 | 9,975.00 | 10,473.75 | 10,997.44 | 11,547.31 |
| Legal & Accounting | 6,000.00 | 6,300.00 | 6,800.00 | 7,200.00 | 7,500.00 |
| Meals & Entertainment | 6,000.00 | 6,300.00 | 6,615.00 | 6,945.75 | 7,293.04 |
| Miscellaneous Expense | 900.00 | 945.00 | 992.25 | 1,041.86 | 1,093.96 |
| Office Expense & Supplies | 5,400.00 | 5,670.00 | 5,953.50 | 6,251.18 | 6,563.73 |
| Payroll Processing Fees | 2,470.00 | 2,519.40 | 2,569.79 | 2,621.18 | 2,673.61 |
| Postage | 780.00 | 795.60 | 811.51 | 827.74 | 844.30 |
| Repairs & Maintenance | 10,200.00 | 10,710.00 | 11,245.50 | 11,807.78 | 12,398.16 |
| Salaries - Officers | 225,539.00 | 225,539.00 | 225,539.00 | 225,539.00 | 225,539.00 |
| Salaries - Office | 34,892.00 | 36,636.60 | 38,468.43 | 40,391.85 | 42,411.44 |
| Supplies & Small Tools | 6,300.00 | 6,615.00 | 6,945.75 | 7,293.04 | 7,657.69 |
| Taxes - CAT | 3,824.24 | 4,070.12 | 4,273.62 | 4,487.30 | 4,711.67 |
| Taxes - Payroll | 23,947.12 | 25,144.48 | 26,401.70 | 27,721.78 | 29,107.87 |
| Taxes - Real Estate | 14,064.00 | 14,767.20 | 15,505.56 | 16,280.84 | 17,094.88 |
| Telephone | 10,125.33 | 10,631.60 | 11,163.18 | 11,721.34 | 12,307.41 |
| Utilities | 33,890.67 | 35,585.20 | 37,364.46 | 39,232.68 | 41,194.32 |
| **Total Operating Expenses** | **477,976.48** | **493,089.92** | **509,467.00** | **526,114.72** | **543,779.46** |
| **Operating Income** | **222,292.31** | **250,579.55** | **268,604.32** | **287,133.44** | **310,131.10** |
| **Other Income & (Expenses)** | | | | | |
| Chapter 11 Expenses | (28,275.00) | | | | |
| Interest | (63,243.67) | (57,941.60) | (52,368.36) | (46,531.72) | (40,731.43) |
| **Total Other Income & (Expenses)** | **(91,518.67)** | **(57,941.60)** | **(52,368.36)** | **(46,531.72)** | **(40,731.43)** |
| **Income before Taxes** | **130,773.64** | **192,637.95** | **216,235.96** | **240,601.72** | **269,399.67** |
| Income Taxes | (34,252.00) | (58,379.00) | (67,582.00) | (77,085.00) | (85,975.00) |
| **Net Income** | **96,521.64** | **134,258.95** | **148,653.96** | **163,516.72** | **183,424.67** |

Reorganized Navarre Industries, Inc.
Pro Forma Statements of Cash Flows
(Unaudited)

| | Year One | Year Two | Year Three | Year Four | Year Five |
|---|---|---|---|---|---|
| **Cash flows from operating activities:** | | | | | |
| Net Income | 96,521.64 | 134,258.95 | 148,653.96 | 163,516.72 | 183,424.67 |
| Reconciliation of net income to net cash provided by operating activities: | | | | | |
| Depreciation | 10,296.00 | 10,810.80 | 11,477.47 | 11,477.47 | 11,477.47 |
| Changes in assets and liabilities: | | | | | |
| Changes in accounts receivable | 1,751.36 | (2,600.67) | (2,152.47) | (2,260.09) | (2,373.09) |
| Changes in inventory | 1,614.25 | (1,182.12) | (978.39) | (1,027.31) | (1,078.68) |
| Changes in accounts payable | 3,400.08 | 2,758.29 | 2,282.92 | 2,397.06 | 2,516.92 |
| Changes in accrued & withholding taxes | 1,214.76 | 1,275.49 | 1,339.27 | 1,406.23 | 1,476.54 |
| **Net cash provided by operating activities** | 114,798.08 | 145,320.73 | 160,622.76 | 175,510.08 | 195,443.83 |
| | | | | | |
| **Cash flows from investing activities:** | | | | | |
| Purchase of property, plant & equipment | | | (2,000.00) | | |
| **Net cash provided by investing activities** | 0.00 | 0.00 | (2,000.00) | 0.00 | 0.00 |
| | | | | | |
| **Cash flows from financing activities:** | | | | | |
| Decrease in unsecured creditors | | (30,000.00) | (40,000.00) | (50,000.00) | (90,000.00) |
| Decrease in priority tax claims | (63,072.23) | (65,973.39) | (69,009.81) | (72,182.59) | (37,329.98) |
| Decrease in PNC Notes | (44,665.74) | (47,066.64) | (49,603.46) | (52,267.33) | (55,099.40) |
| **Net cash flows provided by financing activities** | (107,737.97) | (143,040.03) | (158,613.27) | (174,449.92) | (182,429.38) |
| | | | | | |
| **Net change in cash** | 7,060.11 | 2,280.70 | 9.49 | 1,060.16 | 13,014.45 |
| Cash at the beginning of the year | 5,000.00 | 12,060.11 | 14,340.82 | 14,350.30 | 15,410.46 |
| **Cash at the end of the year** | 12,060.11 | 14,340.82 | 14,350.30 | 15,410.46 | 28,424.91 |

| Account: | Debit | Credit | Descriptions |
|---|---|---|---|
| Accounts Receivable - Other | | 144,083.00 | To write-off old notes as uncollectible |
| Inventory | | 80,283.26 | To write-off obsolete inventory and correct inventory to actual |
| Prepaid Expenses | | 9,843.00 | To adjust as of confirmation date and write-off balance |
| Accounts Payable | 205,752.88 | | To reclassify pre-petition accounts payable and adjust estimated post-confirmation accounts payable |
| Accrued & Withholding Taxes | 296,082.39 | | To reclassify priority tax claims |
| Current Portion of Priority Tax Claims | | 63,072.23 | To setup current portion of priority tax claims payment plan |
| Current Portion of PNC Notes | 114,075.65 | | To setup current portion of four PNC notes |
| PNC Notes (Long Term) | | 54,015.75 | To correct balance and setup long term portion of four PNC notes |
| Unsecured Creditors | | 210,000.00 | To setup balance to be paid to unsecured creditors under the Plan |
| Priority Tax Claims (Long Term) | | 244,495.77 | To setup long term portion of priority tax claims plan |
| N/P Huntington Bank | 141,407.68 | | To write-off and reclassify as unsecured creditor |
| N/P Aerolite | 296,593.60 | | To write-off and reclassify as unsecured creditor |
| Retained Earnings | | 248,119.19 | |
| | 1,053,912.20 | 1,053,912.20 | |